Mr. Theodore SHANBAUM, Dr. Ellis Carp and the Lee Optical and Associated Companies Retirement and Pension Fund Trust (Successors-in-Interest to Grayson Enterprises, Inc.)

v.

The UNITED STATES.

No. 352–82C.

United States Claims Court.

Dec. 22, 1982.

---

Howard M. Liberman, Washington, D.C., for plaintiffs; Joseph P. Benkert, Martin J. Gaynes, and Liberman, Sanchez & Bentley, Washington, D.C., of counsel.

Robert G. Giertz, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant, Lisa Margolis, Federal Communications Commission, of counsel.

## OPINION

MEROW, Judge:

This case comes before the court on motions for summary judgment filed by the parties.[1] The facts are not in dispute. The issue presented is whether a Federal Communications Commission (FCC) order resulted in a "taking" under the fifth amendment of the Constitution. For the reasons given below, it is concluded that no taking has been established and defendant's motion for summary judgment is granted.

## JURISDICTION

Under 28 U.S.C. § 1491, the Claims Court has jurisdiction over claims against the United States "founded * * * upon the Constitution * * * or any regulation of an executive department" except where Congress has expressly placed jurisdiction elsewhere. *South Puerto Rico Sugar Co. Trading Corp. v. United States,* 167 Ct.Cl. 236, 334 F.2d 622 (1964), *cert. denied,* 379 U.S. 964, 85 S.Ct. 654, 13 L.Ed.2d 558 (1965).

■ Defendant contests the jurisdiction of the Claims Court over plaintiffs' taking claim based upon the provisions of 47 U.S.C. § 402(b), 28 U.S.C. § 2342(1), which place exclusive jurisdiction over challenges to FCC orders in the United States Court of Appeals for the District of Columbia. However, plaintiffs do not challenge the validity or propriety of the FCC order concerned. Instead, plaintiffs argue that the order itself was a "taking." Accordingly, to the extent plaintiffs' claim does not challenge the FCC's action, 47 U.S.C. § 402(b) and 28 U.S.C. § 2342(1) are not applicable, and the Claims Court has jurisdiction to consider plaintiffs' claim. *Regional Rail Reorganization Cases,* 419 U.S. 102, 127–56, 95 S.Ct. 335, 350–65, 42 L.Ed.2d 320 (1974).

## BACKGROUND

In 1977 plaintiffs applied for renewal of their licenses to operate four television broadcast stations in Texas. The application was opposed by Midland Telecasting Company. The FCC staff investigated the issues raised[2] and it was concluded that plaintiffs' licenses could not be renewed without a formal hearing.

While transfer of a contested broadcast license is generally not approved by the FCC until questions concerning the validity of the license are resolved, under the FCC policy in effect during the events involved in this litigation, transfers to a minority-controlled concern could be approved prior to a renewal hearing if the transfer was for "substantially less" than the fair market

---

1. While the briefing process has not been fully completed, the position of each party has been carefully stated in the submissions to date and the relevant documents furnished. Further briefing is not deemed to be required in order to reach a decision.

2. The issues raised concerned allegations that plaintiffs 1) had moved a station to another location without prior approval; 2) had misrepresented that move; 3) had engaged in fraudulent billing practices; and 4) had falsified program logs.

value of the stations. *See Jefferson Radio Co. v. FCC,* 340 F.2d 781 (D.C.Cir.1966); *Statement of Policy on Minority Ownership of Broadcast Facilities,* FCC 78–322, 68 FCC 2d 979, 42 RR 2d 1689 (1978); *Clarification of Distress Sale Policy,* FCC 78–725, 44 RR 2d 479 (1978).

Plaintiffs elected to proceed under this "distress sale" policy and filed a petition seeking approval of transfers based on sales asserted, on the basis of appraisals, to be substantially below the fair market value of the stations. The approval request was challenged by the Commission's Broadcast Bureau which alleged that the appraisals were exaggerated. Plaintiffs then lowered their sales price to 75 percent of the appraised fair market value "in order to avoid further delay, * * *." The Broadcast Bureau, in effect, withdrew its objection. Plaintiffs then made a motion for "emergency relief" because of an impending foreclosure of their assets which would have precluded the sales to the minority purchaser. This motion was granted and the sales were approved despite the objections of competitors. As a result, the FCC terminated the hearing on plaintiffs' renewal applications and granted the applications for renewal of licenses for the four television stations to the minority assignees. *In Re Applications of Grayson Enterprises, Inc.,* 77 FCC 2d 156, 47 RR 2d 287 (1980).

Plaintiffs claim compensation for a "taking" of the difference between the sale price received for the stations and their fair market value.

## DISCUSSION

██ It is concluded that the circumstances present in this matter are governed by the precedent set forth in *Trone v. United States,* 213 Ct.Cl. 671 (1977). In that case

plaintiffs asserted a claim based upon the allegation that they had been required to give up property pursuant to the orders of federal officials acting in accordance with governing regulations. Plaintiffs in *Trone* (as in the instant case) did not challenge the propriety of the actions taken by the federal officials [3] or the regulations upon which they relied.[4]

The Court of Claims ruled in *Trone* that the United States cannot be held liable under the Tucker Act for commercial injuries resulting from the course of the normal regulatory process. *See also Eastport Steamship Corp., supra,* at 608–11, 372 F.2d at 1009–1011; *Mosca v. United States,* 189 Ct.Cl. 283, 290, 417 F.2d 1382, 1384 (1969).

Plaintiffs argue that, although they elected to take advantage of the "distress sale" exception in consideration of the termination of the hearing process (which might have resulted in the total loss of their licenses), this election was "mandated" by the FCC and as such it resulted in an unconstitutional taking.

If plaintiffs are attacking the action of the FCC, this would be a matter within the exclusive jurisdiction of the United States Court of Appeals for the District of Columbia. 28 U.S.C. § 2342(1). Absent such an attack, plaintiffs have demonstrated only commercial loss from a regulatory procedure applicable to all similarly situated broadcast licensees.

██ Plaintiffs chose to avail themselves of an FCC policy which permitted them to avoid a hearing which could have terminated their licenses in favor of obtaining a substantial sum (but one less than fair market value) for the transfer of their licenses to minority assignees. As such, this matter falls within the normal regulatory process for which no "taking" can be found.[5]

---

3. This court does not possess jurisdiction over claims sounding in tort. 28 U.S.C. § 1491; *see Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967).

4. *Cf. South Puerto Rico Sugar Co. Trading Corp., supra* (illegal regulation alleged).

5. *Cf. Regional Rail Reorganization Act Cases,* 419 U.S. 102, 125–56, 95 S.Ct. 335, 350–65, 42 L.Ed.2d 320 (1974). Because the regulatory action involved in this matter cannot amount to a taking, it is not necessary to decide whether plaintiffs possessed a property right in their licenses which could be taken. *Cf. Federal Communications Commission v. Sanders*

## CONCLUSION

Plaintiffs having failed to establish a fifth amendment taking of property without payment of just compensation, it is ORDERED that plaintiffs' motion for summary judgment be denied, defendant's motion for summary judgment be granted, and that final judgment be entered dismissing the complaint.

*Brothers Radio Station,* 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940).