**MONTEGO BAY IMPORTS, LTD. a District of Columbia Corporation**

v.

**The UNITED STATES.**

No. 414–85C.

United States Claims Court.

Sept. 29, 1986.

---

James S. Mattson, Key Largo, Fla., for plaintiff.

Platte B. Moring, III, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

MARGOLIS, Judge.

Plaintiff Montego Bay Imports, Ltd. seeks compensation for the sinking of its fishing vessel, CHANTAL S, by the U.S. Coast Guard after the vessel was seized pursuant to 21 U.S.C. § 881 because marijuana was found on board. Plaintiff claims that the unlawful destruction of the CHANTAL S resulted in the United States' failure to institute formal forfeiture pro-

ceedings as required by law, the taking of its property without just compensation or due process, and the illegal exaction of a fine or penalty. The defendant has moved for summary judgment alleging that this court lacks jurisdiction over the plaintiff's claims. Plaintiff moved that the court treat defendant's motion as one to dismiss for lack of jurisdiction over the subject matter of the claims; defendant did not oppose this motion which the court granted. Plaintiff originally filed an action both in this court and in the United States District Court for the Southern District of Florida, and at oral argument requested a transfer of the case to that court if no jurisdiction was found here. Because this court does not have jurisdiction to hear plaintiff's claims, defendant's motion to dismiss for lack of subject matter jurisdiction is granted, and plaintiff's request to transfer the case is granted.

## FACTS

On April 13, 1985, the CHANTAL S, a United States-documented fishing vessel belonging to the plaintiff, departed Jamaica bound for Miami, Florida. On April 16, 1985, the United States Coast Guard (USCG) Cutter COURAGEOUS, on routine patrol approximately thirteen nautical miles northeast of Cayo Romano, Cuba, encountered the CHANTAL S. Personnel of the COURAGEOUS boarded the CHANTAL S for the purpose of a safety and document check. After receiving permission from the master of the CHANTAL S, a "sweep" was conducted of the vessel. As a result of that "sweep," the USCG boarding party discovered marijuana on the CHANTAL S. The master and crew of the CHANTAL S were placed under arrest for importation of a controlled substance pursuant to 21 U.S.C. § 955a, and the vessel was seized pursuant to 21 U.S.C. § 881. The USCG then assumed responsibility for the operation and safe condition of the CHANTAL S.

On April 17, 1985, the USCG changed the escort vessel from the COURAGEOUS to the BEAR. Sometime after the change in escort vessel, a seawater intake hose on the starboard engine of the CHANTAL S burst, resulting in water entering the engine room and the shutting down of the engine by the USCG crew in charge. Additional personnel from the BEAR boarded the CHANTAL S to assist in an assessment of the damage. Although the results of this assessment are in dispute, it is undisputed that the Commanding Officer of the BEAR decided to scuttle the CHANTAL S, and that the scuttling was accomplished.

## DISCUSSION

I. *Failure to Institute Forfeiture Proceedings*

■ Plaintiff claims it has been unlawfully and unconstitutionally deprived of the value and earning capacity of the CHANTAL S because of the defendant's unlawful failure to conduct forfeiture proceedings under the customs laws of the United States. At the heart of plaintiff's claims, however, is the alleged unlawful destruction of the CHANTAL S by the USCG. If the CHANTAL S had not been destroyed after seizure and no forfeiture proceedings had been conducted, it is clear that plaintiff would have no claim within the jurisdiction of the Claims Court. In that situation, the plaintiff would be limited to administrative review and, ultimately, suit in the United States District Court. 28 U.S.C. § 1355; 19 U.S.C. § 1608. A claim for "unlawful destruction" of property and, therefore, for the impropriety of the acts of government officials, sounds in tort. *Shanbaum v. United States*, 1 Cl.Ct. 177, 179 n. 3 (1982), *aff'd mem.*, 723 F.2d 69 (Fed.Cir.1983). The Claims Court has no jurisdiction over claims sounding in tort. 28 U.S.C. § 1491; *Shaw v. United States*, 8 Cl.Ct. 796, 799 (1985); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 609, 372 F.2d 1002, 1010 (1967). It would be ironic if by the existence of an allegedly tortious destructive act of the government, jurisdiction could be found in this court where it would not exist absent the tort.

■ The addition of allegedly tortious conduct by the government to its failure to conduct forfeiture proceedings does not vest jurisdiction in this court to hear a case where it is lacking under either situation alone.

## II. *Taking without Compensation or Due Process*

Plaintiff also claims that the defendant is liable because the destruction of the CHANTAL S resulted in a "taking" of its property without due process or just compensation as required by the Fifth Amendment to the United States Constitution. Defendant asserts that the CHANTAL S was a hazard to navigation and its destruction was within the USCG's "police power" as well as its statutory authority to "destroy ... sunken or floating dangers to navigation," 14 U.S.C. § 88(a)(4).

### A. *Due Process*

■ The "police power" of the government covers actions taken in the public interest and as such is an exception to the requirement that just compensation be paid to individuals for property taken. *See Morton Thiokol, Inc. v. United States*, 4 Cl.Ct. 625, 629–31 (1984) (describing and discussing the limits of "police power"). The court makes no determination whether the destruction of the CHANTAL S was appropriate as an exercise of police power. However, it is clear that no "process" is due prior to the seizure and, if necessary, prior to the destruction of property pursuant to the government's police power. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679–80, 94 S.Ct. 2080, 2089–90, 40 L.Ed.2d 452 (1974) (seizure of pleasure yacht used for unlawful purposes); *North American Cold Storage v. Chicago*, 211 U.S. 306, 315, 29 S.Ct. 101, 104, 53 L.Ed. 195 (1908) (destruction of unwholesome chickens); *Loftin v. United States*, 6 Cl.Ct. 596, 611–12 (1984) (destruction of diseased cattle). Even if process were due in such a circumstance, this court could provide no remedy; claims for solely due process violations are not within this court's jurisdiction. *Cabrera v. United States*, 10 Cl.Ct. 219, 222 (1986); *Shaw*, 8 Cl.Ct. at 800; *Alabama Hospital Association v. United States*, 228 Ct.Cl. 176, 180–81, 656 F.2d 606, 609 (1981), *cert. denied*, 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982).

### B. *Taking*

■ Plaintiff does not question the propriety of the seizure of the CHANTAL S pursuant to 21 U.S.C. § 881 but claims that its subsequent unlawful destruction by the USCG is a taking for public use for which the Fifth Amendment requires compensation. In addition to situations where the government actually appropriates or condemns property, takings can be found in the government's valid use of its regulatory process, *e.g.*, where few individuals are required to bear the burden to benefit the public, *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960), or where the regulation goes too far in depriving an owner of the use of its property, *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922). *See Morton Thiokol, Inc. v. United States*, 4 Cl.Ct. at 630–31. Characteristic of a "taking," therefore, is the government's use of "rightful property, contract, or regulatory" power to control property which it is unwilling to purchase. *Armijo v. United States*, 229 Ct.Cl. 34, 37, 663 F.2d 90, 93 (1981). *See Florida Rock Industries, Inc. v. United States*, 791 F.2d 893, 898–99 (Fed.Cir.1986).

Because plaintiff alleges that the acts of the defendant in destroying the CHANTAL S were unlawful and unauthorized, the acts cannot constitute a taking sufficient to vest jurisdiction in the Claims Court. *Florida Rock*, 791 F.2d at 898; *Armijo*, 229 Ct.Cl. at 40, 663 F.2d at 95. Challenges to the propriety of government action sound in tort. *Shanbaum*, 1 Cl.Ct. at 179. The remedy for government wrongdoing in destroying property is an action for tortious conduct. *Shaw*, 8 Cl.Ct. at 799. "Careless performance of a duty allegedly owed

sounds in tort." *Aviation Contractors, Inc. v. United States,* 207 Ct.Cl. 973, 974, 521 F.2d 1406 (1975). The Claims Court has no jurisdiction over actions that sound in tort. 28 U.S.C. § 1491; *Shaw,* 8 Cl.Ct. at 799; *Shanbaum,* 1 Cl.Ct. at 179 n. 3; *Aviation Contractors,* 207 Ct.Cl. at 974, 521 F.2d 1406; *Eastport Steamship Corp.,* 178 Ct.Cl. at 609, 372 F.2d at 1010.

### III. *Illegal Exaction of a Fine or Penalty*

■ Plaintiff also claims that defendant's unlawful destruction of the CHANTAL S resulted in the illegal exaction of a fine or penalty by the government over which this court has jurisdiction. However, plaintiff has not cited to this court, nor could the court find, any case where jurisdiction was found to determine the merits of an alleged illegal exaction where the property was destroyed, rather than being taken, by the government. Illegal exaction cases have been described as those where the government "has the citizen's money in its pocket." *Eastport Steamship Corp.,* 178 Ct.Cl. at 606, 372 F.2d at 1008. Here the government does not have plaintiff's money in its pocket; in these circumstances the court will not expand the jurisdiction of the court. *See* *Clevenger Roofing & Sheet Metal Co. v. United States,* 8 Cl.Ct. 346, 352–53 (1985).

### CONCLUSION

On July 16, 1985, plaintiff filed parallel actions against the United States in this court and in the United States District Court for the Southern District of Florida (No. 85–2612–CIV–EBD). Plaintiff voluntarily dismissed the district court action. Plaintiff requested that this court transfer the case back to the district court if jurisdiction was found lacking in this court. This court lacks jurisdiction over the subject matter of plaintiff's claims. Therefore, defendant's motion to dismiss is granted, and because plaintiff's claims which sound in tort "could have been brought" in that court, the clerk is directed to enter judgment transferring plaintiff's action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1631. Each party is to bear its own costs.