Donald BODINE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 417–87C.

United States Claims Court.

April 27, 1988.

Donald Bodine, pro se.

Hillary A. Stern, with whom were Asst. Atty. Gen. John R. Bolton, David M. Cohen, Director, and Robert A. Reutershan, Asst. Director, Washington, D.C., for defendant; Joan Johnson, F.A.A., Washington, D.C., of counsel.

## ORDER

ANDEWELT, Judge.

In this civilian pay case, plaintiff, Donald Bodine, appearing *pro se*, seeks reinstatement and back pay as a result of the Federal Aviation Administration's (FAA) termination of his employment as an air traffic controller. Plaintiff was removed from his position on August 25, 1981, for having participated in an illegal strike by the Professional Air Traffic Controllers Organization (PATCO) against the Government of the United States. Plaintiff alleges that the termination of his employment by the FAA and the upholding of that action by the Merit Systems Protection Board (MSPB) violated a series of statutory, regulatory, and Constitutional provisions, including 5 U.S.C. § 8101 *et seq.* (1982) (popularly known as the Federal Employees' Compensation Act (FECA)).

The case is presently before the Court on defendant's motion to dismiss for lack of jurisdiction. For the reasons set forth herein, defendant's motion is granted and the complaint shall be dismissed.

### Facts[1]

On July 15, 1981, plaintiff sustained an injury to his left shoulder while performing his duties as an air traffic controller. He never returned to work. On July 18, 1981, pursuant to 5 U.S.C. § 8118 (the "continuation of pay" provision of FECA, discussed *infra*), plaintiff filed a Form CA–1, "Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Com-

---

1. For purposes of ruling on defendant's motion to dismiss, the facts alleged in the complaint are assumed to be true. In addition, the Court relies upon undisputed facts adduced from materials filed by the parties in connection with their briefs.

pensation," with the Office of Workers' Compensation Programs of the Department of Labor (OWCP).[2] On or about July 23, 1981, pursuant to OWCP Regulation 10.203, 20 C.F.R. § 10.203, the FAA controverted plaintiff's claim for continuation of pay by completing the indicated portion on the Form CA-1.

On August 3, 1981, PATCO went on strike. The FAA scheduled plaintiff to work during the strike, but he failed to report for duty. On August 13, 1981, the FAA sent plaintiff a letter notifying him of proposed action to remove him from his position for (1) unauthorized absence and (2) participation in a strike against the Government of the United States in violation of 5 U.S.C. § 7311 and 18 U.S.C. § 1918. Plaintiff was removed from his position on August 25, 1981, less than 45 days after he filed his claim for continuation of pay.

Plaintiff then challenged the actions of the FAA on two fronts, pursuing his claim for continuation of pay before the OWCP, and appealing the removal action to the MSPB. As to plaintiff's claim for continuation of pay, on September 30, 1981, the OWCP made the following determination:

> The facts of the injury and employment support the employee's contention that he/she was a Federal employee who sustained a traumatic disabling injury in the performance of duty. You should, therefore, continue his/her pay for the period of disability 7/16/81 through 7/22/81.

Contending that he was entitled to pay for periods beyond July 22, 1981, plaintiff sought review of the OWCP finding within the Department of Labor, but, at each stage, the original finding was upheld. Pursuant to the OWCP finding, the FAA continued plaintiff's pay only through July 22, 1981.

Plaintiff's appeal of the removal action to the MSPB was also unsuccessful. After conducting an evidentiary hearing, the MSPB upheld the removal action and found, *inter alia*, that plaintiff had participated in the PATCO strike in violation of the criminal statutes cited by the FAA in its notice of proposed removal action. *Bodine v. Dep't of Transp., FAA*, No. NY075281 F082, slip op. (MSPB Dec. 3, 1982), *appeal dismissed*, 16 M.S.P.R. 711 (1983) (copy attached in Appendix). In its opinion, the MSPB stated:

> Despite a plethora of argument over the techical [sic] requirements for continuation of pay, including [plaintiff's] charges of conspiracy, perjury, and other alleged government procedural misconduct directed at him, what emerged from the *evidence* was not a scintilla of proof that [plaintiff] was, in fact, in any way or for any reason physically disabled on August 5, 1981.

Slip op. at 3.

Plaintiff did not appeal the MSPB's decision to the Court of Appeals for the Federal Circuit. Nearly four years after that decision, on July 13, 1987, plaintiff filed suit in this Court. In his complaint, plaintiff contends that his removal from the FAA and the MSPB's handling of his appeal involved violations of (1) the "continuation of pay" provisions of FECA, 5 U.S.C. § 8118, and the related OWCP Regulations, 20 C.F.R. § 10.200 *et seq.*; (2) article III, section 2, clause 3, and the first and fifth amendments to the Constitution; and (3) the Back Pay Act, 5 U.S.C. § 5596 (1982).[3] Defendant moved to dismiss the complaint for lack of jurisdiction on September 11, 1987.[4]

### Discussion

Plaintiff contends that his removal within 45 days of the filing of his claim for

---

**2.** The OWCP was established by the Assistant Secretary of Labor for Employment Standards, by authority vested in him by the Secretary of Labor. *See* OWCP Regulation 1.1, 20 C.F.R. § 1.1 (1981). In order to commence a continuation of pay claim, an injured employee must provide his or her official superior with notice of the injury on a Form CA-1 within two working days after the injury. *See* OWCP Regulation 10.209(a), 20 C.F.R. § 10.209(a).

**3.** Plaintiff refers to the Back Pay Act in his prayer for relief.

**4.** After filing an opposition to defendant's motion, plaintiff moved for summary judgment. Proceedings with respect to plaintiff's summary judgment motion were suspended pending resolution of the jurisdictional sufficiency of the complaint.

continuation of pay was inconsistent with the controlling provisions in FECA and, in addition, that the MSPB's review of his removal was flawed in numerous respects.[5] For the reasons explained below, however, this Court does not have jurisdiction to entertain plaintiff's suit. Pursuant to the Civil Service Reform Act of 1978 (CSRA), Pub.L. 95–454, 92 Stat. 1111 *et seq.*, (codified as amended in various sections of 5 U.S.C. (1982 & Supp. IV)), the proper forum for judicial review of the FAA's removal action and the MSPB's affirmance thereof is the Court of Appeals for the Federal Circuit.

In *United States v. Fausto,* — U.S. ——, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), the Supreme Court stated that, when enacting the CSRA, Congress intended to provide "an integrated scheme of administrative and judicial review [of adverse personnel actions taken against federal employees], designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* 108 S.Ct. at 672. That integrated scheme permitted plaintiff to contest his removal by the FAA before the MSPB pursuant to 5 U.S.C. § 7702, which he did, and to appeal any adverse MSPB decision to the Court of Appeals for the Federal Circuit, which he failed to do. The CSRA gives the Federal Circuit exclusive jurisdiction in this regard and does not envision any review by the Claims Court. *See* 5 U.S.C. § 7703 (b)(1).[6]

Plaintiff contends, however, that this action is not brought under the CSRA but, rather, is brought under FECA, the related OWCP regulations, various provisions of the Constitution, and the Back Pay Act. Plaintiff contends, in effect, that notwithstanding Congress' enactment of the CSRA, these authorities provide this Court with jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to consider his claims. But examination of the authorities upon which plaintiff relies reveals that they do not confer such jurisdiction upon this Court.

In *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), the Supreme Court described the metes and bounds of the jurisdiction of this Court's predecessor, the Court of Claims, under the Tucker Act.[7] The resultant principles are well settled. In this Court, as in any other court, the United States, as sovereign, is immune from suit except to the extent that it consents to be sued. *Id.* at 399, 96 S.Ct. at 953. Such consents to suit, or waivers of sovereign immunity, "cannot be implied but must be unequivocally expressed." *Id.* (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969)). A grant of a right to sue the Government for money damages must be made "with specificity"; the proper inquiry is whether the applicable Constitutional provision, statute, or regulation "can fairly be interpreted as mandating compensation by the Federal Government for damage sustained." *Testan,* 424 U.S. at 400, 96 S.Ct. at 954 (quoting *Eastport S.S. Corp. v.*

---

5. Plaintiff claims, *inter alia,* that the FAA did not produce sufficient evidence at the MSPB hearing to prove its charges against him; that the FAA officials who ·prepared the agency's response controverting his FECA claim admitted at the hearing that they failed to follow the applicable OWCP regulations; that the MSPB lacked jurisdiction to rule on the criminal charges made by the FAA against the striking air traffic controllers; and that, consequently, the MSPB decision and the underlying FAA removal action are null and void and violative of his constitutional rights to be tried by a jury for alleged criminal conduct, to freedom of speech, and to due process of law.

6. 5 U.S.C. § 7703, in pertinent part, provides:
   § 7703. **Judicial review of decisions of the Merit Systems Protection Board.**
   \* \* \* \* \* \*

   (b)(1) [A] petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit. Notwithstanding any other provision of law, any petition for review must be filed within 30 days after the date the petitioner received notice of the final order or decision of the Board.

7. The Tucker Act, 28 U.S.C. § 1491, confers jurisdiction upon this Court to render judgment upon any claim against the United States that is "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

*United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)). The Tucker Act itself is not such a statute; it is only jurisdictional and, thus, "does not create any substantive right enforceable against the United States for money damages." *Testan,* 424 U.S. at 398, 96 S.Ct. at 953.

When evaluated under the controlling *Testan* standards, none of the authorities cited in the complaint provide jurisdiction in this Court over plaintiff's claims. First, none of the Constitutional provisions in question—article III, section 2, clause 2 (entitling an individual accused of a crime to a trial by jury), the first amendment (providing for freedom of speech), and the due process clause of the fifth amendment —even mention, much less mandate, payment of money by the Government. *See Elkins v. United States,* 229 Ct.Cl. 607, 608 (1981); *Rosano v. United States,* 9 Cl.Ct. 137, 142 (1985), *aff'd,* 800 F.2d 1126, *cert. denied,* —— U.S. ——, 107 S.Ct. 1350, 94 L.Ed.2d 521 (1987). *See also Eastport Steamship,* 178 Ct.Cl. at 605–07, 372 F.2d at 1007. Next, as to the Back Pay Act, the Supreme Court held in *Fausto* that, after enactment of the CSRA, this Court did not have jurisdiction under the Back Pay Act to review an adverse agency personnel action that may give rise to a claim for back pay. 108 S.Ct. at 676–77.

Finally, as to FECA and the related OWCP regulations, plaintiff would interpret these provisions as entitling an employee who has filed a work-related injury claim to a continuation of pay for a period of 45 days following the injury or, at a minimum, to the right to use his sick or annual leave and not report to work during that period. Plaintiff's proposed interpretation of the statute appears incorrect.[8] But even if plaintiff's interpretation were correct, FECA does not contain a waiver of sovereign immunity that would permit a suit against the Government for monetary damages in instances where the Secretary of Labor denied a continuation claim. 5 U.S.C. § 8128 provides:

"[t]he action of the Secretary or his designee in allowing or denying a payment under this subchapter is—

(1) final and conclusive for all purposes and with respect to all questions of law and fact; and

(2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

Hence, rather than evincing an intention to permit lawsuits challenging adverse decisions of the Secretary of Labor on continuation of pay claims, FECA specifically precludes any such judicial review.

*Conclusion*

For the foregoing reasons, defendant's motion is granted and the Clerk of the Court shall dismiss the complaint. No purpose would be served by transferring plaintiff's complaint to the Federal Circuit, since the 30-day statute of limitations within which an appeal of a MSPB decision must be filed expired long before the instant suit was filed. *See* 5 U.S.C. § 7703(b)(1).

IT IS SO ORDERED.

---

8. 5 U.S.C. § 8118, in pertinent part, provides:
    (a) The United States shall authorize the continuation of pay of an employee ... who has filed a claim for a period of wage loss due to a traumatic injury....
    (b) Continuation of pay under this subchapter shall be furnished—
       (1) without a break in time unless controverted under the regulation of the Secretary;
       (2) for a period not to exceed 45 days
          \* \* \* \* \* \*
    (d) If a claim under subsection (a) is denied by the Secretary, payments under this section shall, at the option of the employee, be charged to sick or annual leave....
    Thus, contrary to plaintiff's suggestion, Section 8118(b)(2) does not guarantee continuation of pay for 45 days after an injury. Rather, in permitting the Secretary of Labor to authorize continuation of pay for "a period not to exceed 45 days," the statute merely creates an initial ceiling on continuation of pay, not a floor. Similarly, Section 8118(d) does not entitle an employee to use sick or annual leave for 45 days after an injury, but only permits the use of such leave in situations where payments are made and the Secretary of Labor subsequently denies the employee's claim for continuation of pay. *See* OWCP Regulation 10.210(b), 20 C.F.R. § 10.210(b). Here, no continuation payments were made for the period after July 22, 1981, and, hence, the authorization to use sick or annual leave in Section 8118(d) is inapplicable.

APPENDIX

United States of America

Merit Systems Protection Board

New York Regional Office

Donald Bodine

v.

Department of Transportation Federal Aviation Administration

Case No. NY075281F0852

INITIAL DECISION

Appellant, Donald Bodine, by timely petition, has appealed from the action of the Federal Aviation Administration removing him from his position as an Air Traffic Controller, GS–14, effective August 25, 1981.

Because he was not serving a probationary or trial period in the competitive service, appellant was entitled to appeal his removal under 5 U.S.C. §§ 7511–7513; 7701.

The reasons for appellant's removal were stated by the agency in a notice of proposed removal dated August 5, 1981, from Charles E. Stafford, Chief, New York TRACON, as follows:

1. Violation of 5 U.S.C. § 7311 and 18 U.S.C. § 1918 by participating in a strike against the Government.

2. Unauthorized absence at that same date and time.

To sustain this action, the agency must prove by a preponderance of the evidence that the appellant committed the acts alleged. *Parker v. Defense Logistics Agency*, 1 MSPB 489 [1 M.S.P.R. 505] (1980). Board regulations define this quantum of proof as "that degree of relevant evidence which a reasonable mind, considering the record as a whole, might accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true". 5 C.F.R. 1201.56(c)(2).

Specifically, the agency must prove, by a preponderance of the evidence, that appellant participated in a strike in violation of 5 U.S.C. § 7311 and 18 U.S.C. § 1918. Cases construing these statutes have defined "strike" as "an actual refusal in concert with others to provide services to one's employer". *Ketchem v. Department of Transportation*, [10 MSPB 557, 12 M.S.P. R. 1] MSPB Docket No. DA075281F0713 (May 18, 1982), quoting *United Federation of Postal Clerks v. Blount*, 325 F.Supp. 879, 884 (D.D.C.), *aff'd*, 404 U.S. 802 [92 S.Ct. 80, 30 L.Ed.2d 38] (1971). The Board, in *Ketchem v. DOT*, [12 M.S.P.R. at 2] at 9, took official notice of the fact that an illegal PATCO strike began on August 3, 1981 and continued at least through August 6, 1981.

Further, in *Schapansky v. Department of Transportation*, [12 MSPB 141, 13 M.S.P. R. 589] MSPB Docket No. DA075281F1130 (October 28, 1982), the Board held:

> In a case, such as this one, in which the existence of a strike is a matter of general knowledge, the agency may establish a *prima facie* case of an employee's voluntary participation therein by presenting evidence of his unauthorized absence from duty during the strike. The burden of persuasion would then shift to the employee to rebut the agency's case by presenting evidence to show that he had no knowledge of the existence of the strike or to demonstrate that his absence was due to some factor other than intentional participation in the strike. The agency, of course, must ultimately establish appellant's participation by a preponderance of the evidence pursuant to 5 U.S.C. Section 7701(c)(1)(B).

*Schapansky v. DOT*, [13 M.S.P.R. at 593 fn. 2] at 6 (footnote 2).

At the hearing, the agency adduced testimonial and documentary evidence of the following facts:

1. A nationwide strike of air traffic controllers began on August 3, 1981 and continued through August 6, 1981 of which the presiding official took official notice;

2. Appellant was scheduled, in a schedule posted at least 21 days in advance, to work on August 4, 5, 6, 7, and 8 at 3 p.m. to 11 p.m.;

3. Mr. Bodine did not report for any of his assigned shifts;

4. If Mr. Bodine had reported for work on or before 3 p.m. on August 5, 1981 he would have been permitted to work;

5. Appellant was not on any form of approved leave for August 4 or 5;

6. Appellant failed to contact Chief Stafford or anyone else at the facility to explain his absence or request leave;

7. As a result, Chief Stafford sent appellant the above-mentioned notice of proposed removal;

8. The only responses to the notice from appellant were a request for an extension of time and a request for documents under the Freedom of Information Act;

9. Appellant did not request an oral hearing; [1]

10. Appellant was briefed on 18 U.S.C. § 1918 on June 8, 1981;

11. Appellant was a member of PATCO and was aware that President Reagan had established a deadline by which controllers were required to return to work;

12. Appellant signed an affidavit on February 16, 1959 affirming that he would not participate in a strike against the government.

On cross-examination, Chief Stafford testified that Mr. Bodine had allegedly been struck by a small plastic "strip holder" on or about July 15, 1981. He said he believed a workers' compensation claim was filed and was controverted by the agency. The claim for pay was ultimately allowed for a period of one week. The evidence clearly indicates that appellant's incapacity, if any, ceased as of July 23, 1981.

Applying *Schapansky*, it is clear that the agency established a *prima facie* case against appellant, thus shifting to appellant the burden of going forward to show that his absence was for some reason other than participation in the strike. This burden appellant totally failed to meet.

Despite a plethora of argument over the technical requirements for continuation of

pay, including appellant's charges or conspiracy, perjury, and other alleged government procedural misconduct directed at him, what emerged from the *evidence* was not a scintilla of proof that appellant was, in fact, in any way or for any reason, physically disabled on August 5, 1981. He himself never testified. He offered no medical proof of that allegation, and his own doctor's report, from Elba M. Brooks, M.D., contained in the CA–16 report stated that he was fit for duty on July 23, 1981, thus clearly and directly contradicting his claim of disability. (Agency Exhibit D.) There is absolutely no doubt based upon the credible evidence that appellant was physically able but apparently unwilling to work on August 5, 1981. I have considered appellant's myriad of other procedural arguments and find them to be without merit. *Parker v. Defense Logistics Agency*, 1 MSPB 489 [1 M.S.P.R. 505] (1980). As a result, I find that the agency has established by a preponderance of the evidence that appellant committed the acts charged.

In light of the above, the holding of the Board in *Schapansky*, and because removal has been held by *American Postal Workers Union v. United States Postal Service*, 682 F.2d 1280, 1285 (9th Cir.1982), to be the minimum mandatory penalty for violating 5 U.S.C. § 7311, appellant's removal was proper.

Accordingly, the agency's action in this case is affirmed.

This is an initial decision. It will become a final decision of the Merit Systems Protection Board on January 7, 1983, 35 days from the date of issuance, unless a petition for review is filed with the Board or the Board reopens the case on its own motion. 5 C.F.R. 1201.113 and 1201.117.

Any party to the proceeding, the Director of the Office of Personnel Management (OPM) and the Special Counsel may file a petition for review. The Director may request review only if he/she is of the opin-

---

1. Appellant attempted to introduce a tape recording of a telephone conversation which he allegedly had with Chief Stafford on August 18, 1981. Because he had failed to disclose the existence of this recording as ordered prior to

the hearing, the agency's motion to exclude the tape was granted. Appellant never offered any other evidence regarding the alleged conversation, or the substance thereof.

ion that the decision is erroneous and will have a substantial impact on any civil service law, rule, or regulation under the jurisdiction of the OPM. The Board may grant a petition for review, after providing an opportunity for response by other parties, when it is established that:

   (1) New and material evidence is available that, despite due diligence, was not available when the record was closed; or

   (2) The decision of the presiding official is based on an erroneous interpretation of statute or regulation.

All petitions for review shall set forth objections to the initial decision, supported by references to applicable laws or regulations, and with specific reference to the record. The petition for review must be filed with the Office of the Secretary, Merit Systems Protection Board, 1120 Vermont Ave., N.W., Washington, D.C. 20419, no later than January 7, 1983. Three copies of the petition must be filed with the Secretary.

Pursuant to 5 U.S.C. § 7703(b)(1),[2] appellant may seek judicial review of the Board's final decision on this appeal. A petition requesting such review must be filed with the United States Court of Appeals for the Federal Circuit Court no later than 30 days after receipt of the Board's final order or decision. Judicial review of a final order of the Board in a case involving discrimination under 5 U.S.C. § 7702 may be sought in the appropriate United States District Court.

In court cases involving issues of discrimination which were brought before the Board under 5 U.S.C. § 7702, appellants have the right to request the courts to appoint attorneys to represent them and to request that prepayment of fees, costs or security be waived. 42 U.S.C. § 2000e–5(f)(1).

Administrative review of final orders in cases involving discrimination brought under 5 U.S.C. § 7702 may be sought, pursuant to 5 U.S.C. § 7702(b), by filing a petition for consideration with the Equal Employment Opportunity Commission, Office of Review and Appeals, 2401 E St., N.W., Washington, DC 20506, within 30 days of the date the decision of the Board becomes final.

The agency responsible for taking the action in issue is the proper respondent and must be named as a party whenever judicial review or consideration by the Equal Employment Opportunity Commission is sought. The Board is not the proper respondent in such case and should not be named. 5 U.S.C. § 7703(a)(2).

For the Board:

Dated: <u>December 3, 1982</u>

        /s/ <u>Elliot L. Evans</u>
        Elliot L. Evans
        Presiding Official

---

**2.** As modified by section 127 of the Federal Courts Improvement Act of 1982, to be codified at 28 U.S.C. § 1295(a)(9).