**Jerris W. WISE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 447–86C.

United States Claims Court.

Nov. 29, 1989.

Donald L. Cox, Louisville, Ky., for the plaintiff.

Elizabeth S. Woodruff, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

OPINION

MARGOLIS, Judge.

This federal employee back pay case is before the court on defendant's motion to dismiss for lack of jurisdiction and for failure to state a claim, and on plaintiff's motion for judgment on the pleadings. After careful consideration of the entire record and after hearing oral argument, the court has determined that it lacks jurisdiction to consider plaintiff's claim which is in the nature of an enforcement action of the Merit Systems Protection Board (MSPB) back pay award. Back pay awards are enforced by the MSPB, and MSPB decisions are to be appealed to the United States Court of Appeals for the Federal Circuit. Accordingly, the Claims Court lacks jurisdiction to entertain the plaintiff's claim. The defendant's motion to dismiss is granted, and the plaintiff's motion for judgment on the pleadings is denied.

FACTS

On August 30, 1981, the plaintiff, Jerris W. Wise, was separated from his position as an air traffic controller with the Federal Aviation Administration (FAA). Plaintiff was separated for his participation in the illegal 1981 strike by the Professional Air Traffic Controllers Organization pursuant to an adverse action under 5 U.S.C. § 7511

*et seq.,* which forbids labor strikes by federal employees. Plaintiff appealed to the Merit Systems Protection Board (MSPB). During the pendency of his appeal to the MSPB, plaintiff applied for, and received from the Office of Personnel Management (OPM), a refund of civil servant retirement deductions withheld from his federal salary under 5 U.S.C. § 8342(a).

Subsequently, plaintiff's removal was reversed by the MSPB. *See Alexander v. Department of Transportation, Federal Aviation Administration,* 18 M.S.P.R. 99 (1983). Pursuant to the order of the MSPB and the terms of the Back Pay Act, 5. U.S.C. § 5596, plaintiff was retroactively restored to his position with full back pay. In accordance with regulations promulgated by OPM to implement the Back Pay Act, *see* 5 C.F.R. § 550.805(e)(2), the FAA withheld from the back pay awarded to the plaintiff the amount of the lump-sum retirement refund previously paid to him by OPM. This amount was returned to OPM for redeposit and credit to the plaintiff in the Civil Service Retirement and Disability Fund.

The retirement refund provision of the Civil Service Reform Act (CSRA) of 1978, in effect at the time of plaintiff's reinstatement to the federal service, stated:

> An employee or Member who is separated from the service, or is transferred to a position in which he does not continue subject to this subchapter, is entitled to be paid the lump-sum credit if his separation or transfer occurs and application for payment is filed with the Office of Personnel Management at least 31 days before the earliest commencing date of any annuity for which he is eligible. The receipt of payment of the lump-sum credit by the individual voids all annuity rights under this subchapter, until he is reemployed in the service subject to this subchapter.

5 U.S.C. § 8342(a). As an employee separated from the service, plaintiff was paid a lump-sum refund of his retirement deductions pursuant to this statutory authority.

Upon reinstatement, plaintiff became entitled to receive back pay for the period the adverse action was in effect. Section 5596(b) of the Back Pay Act states:

> (b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—
>
> > (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—
> >
> > (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period; . . .
> >
> > (B) for all purposes, is deemed to have performed service for the agency during that period. . . .
>
> (c) The Office of Personnel Management shall prescribe regulations to carry out this section. . . .

5 U.S.C. § 5596(b)(1)(A)(i)–(B), (c).

Section 5596(c) of the Back Pay Act authorized OPM to promulgate regulations to carry out the Act. On February 1, 1980, OPM published a notice of proposed rulemaking in the Federal Register. The notice stated that the proposed rules were to be designed "to implement the back pay amendments of the Civil Service Reform Act of 1978 and to clarify and simplify the provisions of the current back pay regulations." On December 1, 1981, OPM published the final rules in the Federal Register. The modified rules became effective on that date.

Section 550.805(e) of the regulations provides for computing back pay awards and states:

(e) In computing the amount of back pay under section 5596 of title 5, United States Code, and this subpart, the agency shall deduct—

\* \* \* \* \* \*

(2) Any erroneous payments received from the Government as a result of the unjustified or unwarranted personnel action, which, in the case of erroneous payments received from a Federal employee retirement system, shall be returned to the appropriate system....

5 C.F.R. § 550.805(e). The regulation thus required all prematurely disbursed retirement contributions to be deducted from an erroneously separated employee's back pay award.

However, The Federal Personnel Manual (FPM) effective at the time the plaintiff was separated stated that erroneously separated employees had the *option* of redepositing into the federal retirement system any funds they had withdrawn after the separation. Subchapters S3–4(j) and S4–2(a), S4–3(a) of the FPM Supplement provide:

### S3–4. AMOUNT OF CIVILIAN SERVICE CREDITABLE

\* \* \* \* \* \*

j. *Restoration after erroneous removal or suspension.* When an employee's removal ... is held to have been improper and he or she is restored retroactively ... the person is considered for retirement purposes as properly in the service during the intervening period of erroneous separation ... [i]f, before restoration, the employee received a refund of retirement deductions, he or she must redeposit this refund to be eligible for any future retirement annuity.

\* \* \* \* \* \*

### S4–2. REDEPOSITS

a. *Effect of annuity.* If an employee has received a refund of retirement deductions, under the Civil Service Retirement System or any other system for the retirement of Government employees, the person or a survivor must make a redeposit before the service can be credited in the computation of annuity benefits....

### S4–3. ADVICE TO EMPLOYEES

a. *Optional nature of deposit or redeposit.* The making of a deposit or a redeposit is purely optional.... As for redeposit, however, in most circumstances it is definitely to the employee's advantage....

Federal Personnel Manual Supplement, 831–1, Subchapters S3–4(j), S4–2(a), S4–3 (Inst. 31, September 21, 1981) (Plaintiff's Motion for Judgment on the Pleadings, Appendix at pp. 3–4). The language of these policy statements, giving erroneously separated employees the option of redepositing withdrawn lump-sum retirement fund payments, has been in the Federal Personnel Manual since it was first adopted in 1969 and, in fact, is still part of the FPM Supplement, despite OPM's promulgation of 5 C.F.R. § 550.850(e).

In the Civil Service Reform Act of 1978 (CSRA), Pub.L. 95–454, 92 Stat. 1111 *et seq.* (codified as amended in various sections of 5 U.S.C. (1982 ed.)), Congress expressly granted the MSPB special power to enforce compliance with its orders:

§ 1205 Powers and functions of the Merit Systems Protection Board and Special Counsel

(a) The Merit Systems Protection Board shall:

(1) hear, adjudicate, or provide for the hearing or adjudication, of all matters within the jurisdiction of the Board under this title, section 2023 of title 38, or any other law, rule, or regulation, and, subject to otherwise applicable provisions of law, take final action on any such matter;

(2) order any Federal agency or employee to comply with any order or decision issued by the Board under the authority granted under paragraph (1) of this subsection and *enforce compliance with any such order;*

5 U.S.C. § 1205(a)(1)–(2) (emphasis added).

Although the plaintiff was reinstated and awarded back pay pursuant to an MSPB order, he did not seek enforcement of that order by the MSPB when the FAA with-

held his lump sum retirement refund from his back pay award. Instead, the plaintiff filed a complaint in the United States District Court for the Western District of Kentucky. *Wise v. OPM,* slip op. No. C83–0470–L(B) (W.D.Ky. November 21, 1985). In a motion to dismiss before the district court, the government argued that exclusive jurisdiction over the plaintiff's claim lies in the United States Claims Court. The district court granted the government's motion, and the plaintiff filed a complaint in this court. Before a hearing on cross-motions for summary judgment, the defendant moved on January 11, 1989 to dismiss the Claims Court complaint by way of a "Suggestion" of lack of jurisdiction. The basis for the defendant's motion was the recent decision by the Supreme Court in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), which curtailed the exercise of jurisdiction by the Claims Court over back pay appeals.

Defendant argues that this court lacks jurisdiction to entertain plaintiff's claim, which should properly have been brought before the MSPB. In the alternative, defendant maintains that 5 C.F.R. § 550.805(e) is merely an "interpretive" regulation and therefore compliance with the notice and comment provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 553, is not mandatory. Defendant argues, nevertheless, that OPM complied with the notice and comment provisions of the APA and that the regulation was properly applied to the plaintiff. Plaintiff maintains that the court may exercise jurisdiction. Plaintiff further asserts that 5 C.F.R. § 550.805(e) is a "legislative" regulation requiring compliance with the APA, and that OPM failed to properly comply with these procedures when it promulgated the regulation. Plaintiff further alleges that the regulation was retroactively and wrongfully applied to the plaintiff resulting in the taking of a vested property interest by the government.

## DISCUSSION

### *Jurisdiction Over Back Pay Appeals*

■ The defendant contends that this court lacks jurisdiction to entertain the plaintiff's claim because the action, in essence, contests the implementation of the MSPB's reinstatement and back pay award. Thus, defendant argues, because the CSRA established an exclusive means for the review of federal employee back pay actions and provided for enforcement of back pay awards by the MSPB and for appeals of MSPB decisions to the Federal Circuit, the Claims Court does not have jurisdiction. Plaintiff contends that because his claim challenges the validity of an OPM regulation, and states a claim for a constitutional deprivation of property, the court may properly exercise jurisdiction.

Any doubts concerning the exercise of jurisdiction over claims relating to federal employee personnel decisions under the CSRA were resolved by the Supreme Court's recent decision in *Fausto.* The Back Pay Act provides that a federal employee who is found by an "appropriate authority" to have been affected by an unjustified personnel action is entitled to back pay. 5 U.S.C. § 5596(b)(1). In *Fausto,* Justice Scalia wrote that:

> [U]nder the comprehensive and integrated review scheme of the CSRA, the Claims Court (and any other court relying on Tucker Act jurisdiction) is not an "appropriate authority" to review an agency's personnel determination.
>
> \*     \*     \*     \*     \*     \*
>
> Now, as previously, if an employee is found by an "appropriate authority" to have undergone an unwarranted personnel action a suit for back pay will lie. Post–CSRA, such an authority would include the agency itself, or the MSPB or the Federal Circuit where those entities have the authority to review the agency's determination.

484 U.S. at 454, 108 S.Ct. at 676–77. Thus, *Fausto* conclusively established that the Claims Court is not found on the path for prosecuting personnel pay actions.

The plaintiff in *Fausto* was an employee of the Fish and Wildlife Service of the United States Department of the Interior who was suspended for 30 days for the

unauthorized use of a government vehicle. The employee ultimately brought the suit in the Claims Court under the Back Pay Act, alleging that the suspension was improper. The court dismissed the suit stating that "the CSRA comprise[d] a comprehensive catalogue of remedies for adverse personnel actions." *Fausto v. United States,* 7 Cl.Ct. 459, 461 (1985). The court emphasized that this "all-inclusive catalog of remedies" should be viewed as a "sweeping mandate" establishing a *"comprehensive scheme* for review of federal employee personnel actions" *Id.* at 460 (emphasis added).

The Court of Appeals for the Federal Circuit disagreed. The court stated that the government's position that Claims Court review of personnel actions under the Back Pay Act was repealed by the CSRA "does not withstand scrutiny." *Fausto v. United States,* 783 F.2d 1020, 1022 (Fed.Cir.1986), *reversed,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Judge Bissell observed ·that the plaintiff had "invoke[d] a right grounded in a regulation of an executive department as required by the Tucker Act and a money-mandating pay statute does exist for Department of Interior employees...." *Id.* at 1022–23. Thus, "[t]he correct inquiry is whether Congress has in the CSRA withdrawn the Tucker Act remedy that would otherwise exist." *Id.* at 1023. The Federal Circuit "conclude[d] that Congress has not." *Id.*

Central to the Supreme Court's opinion in *Fausto* was the structural view of statutory interpretation adopted in considering the jurisdictional ramifications of the CSRA. Justice Scalia posited:

> The question we face is whether that withholding of remedy was meant to preclude judicial review for those employees, or rather merely to leave them free to pursue the remedies that had been available before enactment of the CSRA. The answer is to be found by examining the purpose of the CSRA, *the entirety of its text, and the structure of review that it establishes.*

484 U.S. at 443–44, 108 S.Ct. at 671 (emphasis added) (citations omitted). After canvassing the "entirety of its text" the Supreme Court found "a clear congressional intent to deny the excluded employees the protections [in question]." *Id.* at 447, 108 S.Ct. at 673.

The Court noted that similar statutory interpretation methodologies were adopted in other recent cases. *See id.* (citing *Block v. Community Nutrition Institute,* 467 U.S. 340, 345–48, 104 S.Ct. 2450, 2453–55, 81 L.Ed.2d 270 (1984), Agricultural Marketing Agreement Act of 1937). The methodology adopted by the Supreme Court in interpreting the CSRA in *Fausto* was also greeted with praise from commentators. For instance, Judge Starr of the D.C. Circuit Court of Appeals wrote, with regard to *Fausto* and other cases embracing the structural approach, that:

> [T]he judicial tendency to resort to structuralism in interpretive methodologies seems nowadays to be becoming more pronounced. Upon reflection, that is as it should be in an era of post-New Deal genre statutes [such as the CSRA]. The Supreme Court seems to be saying that statutes not infrequently represent a forest, which warrant a bird's eye perspective in review, with the moral judge seeking to carry out the basic judicial function in a democratic society of saying what the law means, faithful to the intent of the lawmaking branch.

Starr, *Of Forests and Trees: Structuralism in the Interpretation of Statutes,* 56 Geo.Wash.L.Rev. 703, 710 (1988).

Mindful of the interpretive methodology mandated by the Supreme Court in *Fausto,* the court has concluded that it lacks jurisdiction to entertain plaintiff's complaints in this case. This conclusion is confirmed by numerous recent Claims Court opinions. *See Hedman v. United States,* 15 Cl.Ct. 304, 316, (1988); *Bodine v. United States,* 14 Cl.Ct. 661, 664 (1988), *aff'd.,* 865 F.2d 269 (Fed.Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1958, 104 L.Ed.2d 427 (1989); *Barbee v. United States,* 14 Cl.Ct. 387, 389 (1988), *aff'd.,* 867 F.2d 616 (Fed. Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 52, 107 L.Ed.2d 20 (1989); *Turvene v. United States,* 14 Cl.Ct. 227, 231 (1988).

**768**

Moreover, as the Federal Circuit recognized "[w]here an employee is provided a means of redress under the CSRA, that is, an appeal to the [MSPB], the employee does not have an independent cause of action in the Claims Court." *McClary v. United States*, 775 F.2d 280, 282 (Fed.Cir. 1985).

In addition to the Tucker Act, the plaintiff bases his jurisdictional arguments on a variety of other theories, including allegations that the FAA's action violates the Fifth Amendment and that OPM's regulation, 5 C.F.R. § 550.850(e), is invalid for failure to comply with statutory rulemaking requirements. In particular, the plaintiff would have this court focus on a specific personnel regulation in assessing his entitlement to the sought-after relief. However, this is precisely the near-sighted approach that was rejected by the Supreme Court in *Fausto*. The court must not lose sight of the CSRA "forest" by accepting plaintiff's suggestion that it focus on particular "trees."

■ The plaintiff also makes vague allegations concerning the government's violation of the Fifth Amendment of the Constitution, on the one hand characterizing its allegations as stating a claim under the due process clause, and on the other, arguing that the plaintiff has been subjected to an unconstitutional deprivation of property. In this regard, it is beyond question that the due process clause of the Fifth Amendment does not provide a basis for the exercise of jurisdiction by the Claims Court. *Montego Bay Imports, Ltd. v. United States*, 10 Cl.Ct. 806, 809 (1986); *Alabama Hospital Association v. United States*, 228 Ct.Cl. 176, 180–81, 656 F.2d 606, 609 (1981), *cert. denied*, 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982).

Although constitutional "takings" cases are within the purview of Claims Court jurisdiction, *see, e.g., Yuba Goldfields, Inc. v. United States*, 723 F.2d 884, 887 (Fed. Cir.1983); *Morton Thiokol v. United States*, 4 Cl.Ct. 625, 629 (1984), the court has determined that, based on the facts of this case and the nature of the relief sought, the plaintiff has not stated a "tak-

ings" claim, but rather seeks the kind of review of his back pay award that falls squarely within the ambit of the "comprehensive and integrated review scheme" established by the CSRA. *Fausto*, 484 U.S. at 454, 108 S.Ct. at 676. It is well established that a court is not bound by a party's own characterizations of its claims. *See Montego Bay Imports*, 10 Cl.Ct. at 809–10 (concluding that plaintiff's takings claim actually sounds in tort and is thus beyond the jurisdiction of the Claims Court).

The plaintiff has, in essence, stated no more than a challenge to the implementation of his back pay award. As the Supreme Court stated in *Fausto*, the statutory scheme of the CSRA emphasizes "the primacy of the MSPB for administrative resolution of disputes over adverse personnel action." 484 U.S. at 449, 108 S.Ct. at 674. Plaintiff has simply chosen the wrong avenue of review in this case. The fact that the type of relief sought by the plaintiff, review of a regulation and an award of money damages, is available to claimants in this court, is of no moment. The relief being sought by the plaintiff now, was available and should have been sought through an enforcement action before the MSPB and an appeal to the Federal Circuit. Moreover, the Supreme Court's opinion in *Fausto*, compels this result.

CONCLUSION

For the reasons stated above, the court has concluded that it does not have jurisdiction to entertain plaintiff's claim. Although the parties previously stipulated that jurisdictions lies in this court, it is well established that parties cannot confer jurisdiction on a court by agreement. Accordingly, the defendant's motion to dismiss is granted, and the plaintiff's motion for judgment on the pleadings is denied. The Clerk will dismiss the complaint. Each party will bear its own costs.