Jane GALLO, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 06–0580 C.

United States Court of Federal Claims.

May 29, 2007.

William L. Bransford, Washington, D.C., for plaintiff.

Elizabeth A. Thomas[1], United States Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen[2], Director, and Kathryn A. Bleecker, Assistant Director, Washington D.C., for defendant. Theresa D. Dunn, Federal Aviation Administration, Atlanta, GA, of counsel.

## OPINION

BUSH, Judge.

This case is before the court following briefing on defendant's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The issues presented in the motion are (1) whether the Court of Federal Claims may exercise jurisdiction over a claim under 5 U.S.C. § 8151(a) (2000), a section of the Federal Employees' Compensation Act (FECA); and (2) whether plaintiff may properly state a claim for relief under that statute. For the reasons that follow, the court

---

1. As of March 15, 2007, David F. D'Alessandris.

2. As of February 12, 2007, Jeanne E. Davidson, Acting Director.

concludes that both of those questions must be answered in the negative. Defendant's motion is granted, and the case is dismissed.

## BACKGROUND

### I. Factual Background

Plaintiff in this action, Ms. Jane Gallo (plaintiff, Ms. Gallo) has been an employee of the Federal Aviation Administration (FAA), a branch of the Department of Transportation (DOT), for more than twenty years. In this suit, Ms. Gallo seeks an increase in the compensation and benefits she currently receives from the FAA as remuneration for her work as a Supervisory Air Traffic Control Specialist. Plaintiff claims that the FAA has calculated her salary improperly, in violation of 5 U.S.C. § 8151(a), a section of FECA that governs the rights of federal employees who return to work following recovery from occupational injuries. Ms. Gallo argues that she is entitled to a salary increase and at least $90,000 in back pay as a result of the FAA's error.

The parties agree, in the main, on the events which led to Ms. Gallo's request for relief. On January 22, 1995, while working as an Air Traffic Controller Specialist in Miami, Florida, Ms. Gallo suffered a compensable on-the-job injury. From January 24, 1995 until March 2, 1995, plaintiff was unable to work, and she received Office of Workers' Compensation Programs (OWCP) Continuation of Pay benefits from the FAA as compensation for her injury. These payments were mandated by FECA. *See* 5 U.S.C. § 8118 (2000).[3]

By March 3, 1995, plaintiff's condition had improved, somewhat, and she returned to light duty. On January 10, 1996, however, an FAA physician determined that Ms. Gallo was indefinitely incapacitated and therefore unable to work as an air traffic controller. When plaintiff learned that the FAA intended to separate her from service, she applied for other FAA jobs that did not require medical certification. On April 14, 1996, Ms.

Gallo voluntarily transferred to a full-time position as an automation specialist, a post which she was able to fill despite her injury. Because that position did not provide the same pay or retirement benefits as plaintiff's initial assignment, the FAA paid OWCP differential pay benefits to her, as required by FECA.

Four years later, on April 19, 2000, an independent physician determined that Ms. Gallo had recovered from her injury. The legal ramifications of the events which followed are the subject of some disagreement between the parties. Plaintiff alleges that, on June 19, 2000, the DOT informed her that her entitlement to compensation had ended, however she could request a "restoration to duty" from the FAA, as mandated under FECA. Ms. Gallo states that she then asked the FAA to restore her to her previous post, or to grant her priority consideration for another air traffic controller position. She states further that the FAA did, in fact, place her on a priority consideration list, and that on August 13, 2000, she was re-assigned to the agency's Air Traffic Controller division to work as a Supervisory Air Traffic Control Specialist. The United States disputes Ms. Gallo's characterization of events. Defendant states that Ms. Gallo was not, and indeed could not have been "restored" to her previous position as an air traffic controller, because she was never officially separated or furloughed from her employment with the FAA, nor did her pay grade level decrease as a result of her job changes. In fact, the United States claims that Ms. Gallo was not appointed to her new position because of a "restoration," but because she applied for it through the FAA's competitive process.

The parties do agree that when the FAA set Ms. Gallo's salary in her new supervisory position, the agency did not take into account pay increases that had been granted exclusively to air traffic controllers during the time she was disabled and working as an automation specialist. These pay increases came about as a result of the 1998 Air Traffic Control System pay reform. The FAA like-

---

3. Continuation of pay benefits allow a federal employee to continue receiving wages for up to forty five days after suffering an on-the-job injury, pending the Office of Workers' Compensation

Programs' decision regarding the employee's claim for compensation. 5 U.S.C. § 8118 (2000); 1 West's Fed. Admin. Prac. § 1083 (4th ed.2006).

wise did not credit Ms. Gallo for the time she had spent in her automation specialist job when it calculated her seniority in the new position.

## II. Procedural Background

On September 8, 2000, less than one month after she returned to work as an air traffic controller, plaintiff filed an appeal with the Merit Systems Protection Board (MSPB, the Board). In that forum, Ms. Gallo alleged that the FAA had violated FECA when it failed to provide her with the financial benefits bestowed upon air traffic controllers under the 1998 Air Traffic Control System pay reform. Plaintiff's claim was based on 5 U.S.C. § 8151(b)(2) (2000), a section of FECA which provides that

the department or agency which was the last employer shall, if the injury or disability is overcome within a period of more than one year after the date of commencement of compensation, make all reasonable efforts to place, and accord priority to placing, the employee in his former or equivalent position within such department or agency, or within any other department or agency.

*Id.*

On January 3, 2001, an administrative law judge dismissed plaintiff's appeal for failure to state a claim upon which relief could be granted, and for lack of subject matter jurisdiction. The first ruling centered on 5 C.F.R. § 353.301(b) (2007), a regulation which implements 5 U.S.C. § 8151(b). *Gallo v. Dep't of Transp.*, No. AT–0353–00–0909–I–1, slip op. at 4 (M.S.P.B. Jan. 3, 2001) (citing 5 C.F.R. § 353.301(b)). Section 353.301(b) provides that a separation or furlough from federal employment, or a decrease in grade level, are a prerequisite to restoration rights under 5 U.S.C. § 8151(b). Because Ms. Gallo had not been separated or furloughed at any time during her period of disability, and since she had not accepted a lower-graded position in lieu of separation, the administrative law judge found that Ms. Gallo had no cause of action under 5 U.S.C. § 8151(b). *Id.* The administrative law judge then examined whether the MSPB possessed jurisdiction over Ms. Gallo's claim. *Id.* at 5. To do so, he

reviewed another OPM regulation, 5 C.F.R. § 353.304(b), its companion regulations, and prior MSPB decisions which had interpreted it. This provision dictates that claimants who recover from occupational injuries more than one year after becoming disabled may appeal an agency's failure to restore them (to their last position or an equivalent one) when that failure results from the employment of another person, but may not file appeals that challenge the specific details of their restoration. *See id.* Based on this restriction, the administrative law judge determined that because Ms. Gallo had recovered from her injury after more than one year, she lacked the ability to pursue her improper restoration claim before the Board, and jurisdiction over her appeal was nonexistent. Ms. Gallo did not appeal the MSPB's decision to the United States Court of Appeals for the Federal Circuit, which possesses exclusive jurisdiction over appeals from MSPB decisions.

More than four years later, on September 12, 2005, plaintiff filed a formal complaint with the DOT alleging that she had been a victim of age and gender discrimination. Ms. Gallo claimed that, when the FAA assigned her to her new position without increasing her salary or granting her service credit for her work as an automation specialist, the agency treated her less favorably than two similarly situated male employees. On March 8, 2006, the DOT's Office of Civil Rights dismissed the complaint on the ground that it raised the same matter pursued in plaintiff's MSPB action. Ms. Gallo appealed that decision to the United States Equal Employment Opportunity Commission's (EEOC) Office of Federal Operations, and the EEOC affirmed the determination, but on different grounds. The EEOC found that Ms. Gallo had failed to diligently pursue her discrimination claim, given that more than four years had elapsed between the time her MSPB appeal was dismissed, in January 2001, and her first contact with an EEO counselor, in March 2005. The EEOC informed plaintiff of her right to appeal its decision to an appropriate federal district court, but she declined to do so. Instead, on August 10, 2006, Ms. Gallo filed this suit in the Court of Federal Claims.

## DISCUSSION

### I. Jurisdiction

The Tucker Act delineates this court's jurisdiction. 28 U.S.C. § 1491 (2000). That statute "confers jurisdiction upon the Court of Federal Claims over [ ] specified categories of actions brought against the United States...." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) (*en banc*). These include claims founded upon the Constitution, an act of Congress, a regulation promulgated by an executive department, any express or implied contract with the United States, or any claim for liquidated damages in cases not sounding in tort. *Id.* (citing 28 U.S.C. § 1491(a)(1)). The Tucker Act concurrently "waives the Government's sovereign immunity for those actions." *Id.* The statute does not, however, create a substantive cause of action or right to recover money damages in the Court of Federal Claims. *Id.; see also Ky. Bridge & Dam, Inc. v. United States*, 42 Fed.Cl. 501, 516 (1998) (citing *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan*, 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (*en banc*)). Instead, "to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher*, 402 F.3d at 1172. In other words, the source must be money-mandating, in that it " 'can fairly be interpreted as mandating compensation by the Federal Government....' " *Testan*, 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967) and citing *Mosca v. United States*, 189 Ct.Cl. 283, 417 F.2d 1382, 1386 (1969)); *Khan v. United States*, 201 F.3d 1375, 1377–78 (Fed.Cir.2000). If the provision relied upon is found to be money-mandating, the plaintiff need not rely upon a waiver of sovereign immunity beyond the Tucker Act. *Huston v. United States*, 956 F.2d 259, 261 (Fed.Cir.1992) (citing *United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)).

### II. Standards of Review

#### A. Lack of Subject Matter Jurisdiction under RCFC 12(b)(1)

Defendant argues that this suit must be dismissed, under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), because the court lacks subject matter jurisdiction to consider Ms. Gallo's claim. It is well-settled that subject matter jurisdiction may be challenged by the parties, or by the court on its own initiative, at any time. If jurisdiction is found to be lacking, the court must dismiss the action. RCFC 12(h)(3). The court's determination of jurisdiction begins with an examination of the complaint, "which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir. 1997). The court must presume all undisputed factual allegations to be true, and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). However, the non-movant bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Cubic Def. Sys., Inc. v. United States*, 45 Fed.Cl. 239, 245 (1999) (citing *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed.Cir.1993)).

#### B. Failure to State a Claim Upon Which Relief Can Be Granted under RCFC 12(b)(6)

Defendant also asks that the complaint be dismissed for failure to state a claim upon which relief can be granted, a request which is governed by RCFC 12(b)(6). *White & Case LLP v. United States*, 67 Fed.Cl. 164, 168 (2005). It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir.2002). When considering a motion to dismiss under this rule, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer*, 416 U.S. at 236, 94

S.Ct. 1683. Indeed, the complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [4] *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. Analysis

In this lawsuit, plaintiff seeks back pay and an increase in salary and benefits which she believes she is entitled to under FECA, 5 U.S.C. § 8101 *et seq.* That federal statute "provides worker's compensation to federal employees or their survivors for employment-related injuries or deaths." *Collins v. United States*, 35 Fed.Cl. 620, 624 (1996); *see also New v. Dep't of Veterans Affairs*, 142 F.3d 1259, 1261 (Fed.Cir.1998). Compensation awarded under FECA constitutes an employee's exclusive remedy against the United States for work-related disabilities. *Collins*, 35 Fed.Cl. at 624 (citing 5 U.S.C. § 8116 (2000); 5 U.S.C. § 8149 (2000)). FECA is implemented through regulations found in various parts of the Code of Federal Regulations, including 5 C.F.R. Part 353.

Ms. Gallo's lawsuit is based specifically on 5 U.S.C. § 8151, a section of FECA that sets forth a federal agency's obligation to "restore" an employee to his or her last position, or an equivalent one, following recovery from a compensable injury. *New*, 142 F.3d at 1261; *see* 5 U.S.C. § 8151. The section, titled "Civil service retention rights," provides as follows:

(a) In the event the individual resumes employment with the Federal Government, the entire time during which the employee was receiving compensation under this chapter shall be credited to the employee for the purposes of within-grade step increases, retention purposes, and other rights and benefits based upon length of service.

(b) Under regulations issued by the Office of Personnel Management—

(1) the department or agency which was the last employer shall immediately and unconditionally accord the employee, if the injury or disability has been overcome within one year after the date of commencement of compensation or from the time compensable disability recurs if the recurrence begins after the injured employee resumes regular full-time employment with the United States, the right to resume his former or an equivalent position, as well as all other attendant rights which the employee would have had, or acquired, in his former position had he not been injured or disabled, including the rights to tenure, promotion, and safeguards in reductions-in-force procedures, and

(2) the department or agency which was the last employer shall, if the injury or disability is overcome within a period of more than one year after the date of commencement of compensation, make all reasonable efforts to place, and accord priority to placing, the employee in his former or equivalent position within such department or agency, or within any other department or agency.

5 U.S.C. § 8151. As the text of § 8151 makes clear, a federal employee's right to resume employment following recovery from a compensable injury is dictated, in part, by the length of his or her recovery period. *New*, 142 F.3d at 1261. An employee who recovers fully within one year of the date of injury is entitled to return to his or her former position, or an equivalent one, without condition. *Id.; see also* 5 U.S.C.

---

4. In this case, defendant's RCFC 12(b)(6) motion and its reply include appendices of evidence in support of its request for dismissal. Plaintiff's response and sur-reply also include outside evidence. The inclusion of that evidence is important because, when ruling on an RCFC 12(b)(6) motion, a court that considers evidence outside the pleadings must convert the motion to one for summary judgment, under RCFC 56. RCFC 12(b); *see District of Columbia v. United States*, 67 Fed.Cl. 292, 301 (2005) (citing *De Brousse v. United States*, 28 Fed.Cl. 187, 188 (1993);

*Schultz v. United States*, 5 Cl.Ct. 412, 416 (1984)). The decision whether to consider matters outside the pleadings "is a matter left entirely to the court's discretion." *Am. Heritage Bancorp v. United States*, 56 Fed.Cl. 596, 604 (2003) (citation omitted). In this case, the court finds that the pleadings include sufficient information from which to rule on defendant's motion, and so, will not consider materials outside the pleadings. Accordingly, no conversion of the RCFC 12(b)(6) motion is necessary.

§ 8151(b)(1); 5 C.F.R. § 353.301(a) (2007). An employee like Ms. Gallo, on the other hand, who does not recover until more than a year after being injured, is entitled only to priority consideration for restoration to his or her former position or its equivalent. *New*, 142 F.3d at 1261; 5 U.S.C. § 8151(b)(2); 5 C.F.R. § 353.301(b). "Priority consideration is accorded by entering the individual on the agency's reemployment priority list for the competitive service." *New*, 142 F.3d at 1261; *see* 5 C.F.R. § 353.301(b). The 5 C.F.R. Part 353 regulations referenced in § 8151(b) limit the right to priority consideration, by specifying that such consideration is only afforded to employees who have been separated from service, or who accept a lower graded position in lieu of separation, as a result of their injuries. *See* 5 C.F.R. § 353.301(b) (stating that "[a]n employee who *separated* because of a compensable injury and whose full recovery takes longer than 1 year . . . is entitled to priority consideration . . . .") (emphasis added). Similarly, 5 C.F.R. § 353.103, titled "Persons covered," provides that Part 353's protections apply only to employees who are separated or furloughed as a result of a compensable injury. 5 C.F.R. § 353.103(b) (2007). As a counterpoint to the government's obligation to make an effort to place a recovered employee, employees are required to return to work as soon as they are able to do so. *New*, 142 F.3d at 1261. In addition, federal employees who return to government service following recovery from a compensable injury are entitled to credit for the time during which they received FECA compensation, for purposes of within-grade step increases, retention, and other benefits that accrue based upon length of service. 5 U.S.C. § 8151(a).

Typically, federal employees who file claims to enforce their rights under 5 U.S.C. § 8151 focus on subsections (b)(1) or (b)(2) of that statute, depending on their recovery time. Here, however, Ms. Gallo attempts to sue under 5 U.S.C. § 8151(a). Plaintiff argues that, under this subsection of FECA, the FAA must "return her" to the level of salary, benefits, and other rights she would have received "if she had never been injured." Pl.'s Resp. at 1. Plaintiff relies on one of the OPM regulations found in Part

353, 5 C.F.R. § 353.107 (2007), as further authority for that relief. That regulation, titled "Service credit upon reemployment," states as follows:

> Upon reemployment, an employee absent because of . . . compensable injury is generally entitled to be treated as though he or she had never left. This means that a person who is reemployed following . . . full recovery from compensable injury receives credit for the entire period of the absence for purposes of rights and benefits based upon seniority and length of service, including within-grade increases, career tenure, completion of probation, leave rate accrual, and severance pay.

5 C.F.R. § 353.107. Ms. Gallo argues that the FAA violated her rights under 5 U.S.C. § 8151(a) and 5 C.F.R. § 353.107 when it returned her to an air traffic controller position without granting her an increased salary and retirement credit.

## A. Lack of Subject Matter Jurisdiction

The United States argues that the Court of Federal Claims lacks jurisdiction to consider Ms. Gallo's claim for increased compensation and benefits under 5 U.S.C. § 8151(a) and 5 U.S.C. § 353.107. This argument is two-fold. First, defendant contends that plaintiff's claim is governed by the Civil Service Reform Act of 1978 (CSRA), Pub.L. 95–454, 92 Stat. 1111 *et seq.* (codified as amended in scattered sections of 5 U.S.C.), which requires her to bring her complaint to the MSPB rather than the Court of Federal Claims. Second, the government argues that, even if Ms. Gallo is entitled to pursue this claim outside of the procedural parameters of the CSRA, FECA's own jurisdictional provisions dictate that her claim should have been filed with the Secretary of Labor. Either way, defendant insists that the court cannot entertain Ms. Gallo's cause of action.

### 1. Subject Matter Jurisdiction under the CSRA

Defendant's first argument in favor of dismissal is based on the CSRA. The CSRA was implemented in 1978, to provide a "comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455,

108 S.Ct. 668, 98 L.Ed.2d 830 (1988); *Ayrault v. Pena,* 60 F.3d 346, 347 (7th Cir.1995) (stating that the CSRA "elaborated a comprehensive framework for handling the complaints of civil service employees faced with adverse personnel decisions"). The statute represents Congress' intention to provide "an integrated scheme of administrative and judicial review [of adverse personnel actions taken against federal employees], designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Bodine v. United States,* 14 Cl.Ct. 661, 663 (1988) (quoting *Fausto,* 484 U.S. at 445, 108 S.Ct. 668).

The CSRA's procedural framework encompasses various personnel actions, including "(1) removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less...." 5 U.S.C. § 7512(1)-(5) (2000); *Zaccardelli v. United States,* 68 Fed. Cl. 426, 431 n. 4 (2005). Through the CSRA, federal employees are permitted to challenge adverse personnel actions related to these subjects before the MSPB, and to appeal decisions from that body to the Federal Circuit. 5 U.S.C. §§ 7701, 7703 (2000); *Bodine,* 14 Cl.Ct. at 663; *see also Ayrault,* 60 F.3d at 348 (stating that Congress recognized the primacy of the MSPB and the Federal Circuit in interpretive matters under the CSRA). The exclusive delegation of CSRA jurisdiction to those bodies is intended to foster the development "of a unitary and consistent Executive Branch position on matters involving personnel action"; to "avoid[ ] an unnecessary layer of judicial review in lower federal courts"; and to "encourage[ ] more consistent judicial decisions." *Fausto,* 484 U.S. at 449, 108 S.Ct. 668 (internal quotations omitted); *see Ayrault,* 60 F.3d at 348; *Sacco v. United States,* 63 Fed.Cl. 424, 428 (2004). To allow "resort to alternative remedies for complaints about matters within the statute's scope would undermine the CSRA because the statute 'prescribes in great detail the protections and remedies applicable to. such action, including the availability of administrative and judicial review.'" *Ayrault,* 60 F.3d at 348 (quoting *Fausto,* 484 U.S. at 443, 108 S.Ct. 668). Accordingly, the CSRA

essentially preempts the field, and supersedes preexisting remedies for federal employees. *Ayrault,* 60 F.3d at 348.

The law is clear that, because the CSRA gives the MSPB and the Federal Circuit exclusive jurisdiction over certain federal personnel matters, it "does not envision any review by the [Court of Federal Claims]." *Bodine,* 14 Cl.Ct. at 663 (citing 5 U.S.C. § 7703(b)(1)); *Sacco,* 63 Fed.Cl. at 428 ("Under well entrenched precedent, the Court of Federal Claims has no jurisdiction to entertain actions seeking monetary remedies stemming from adverse personnel actions over which the MSPB and the Federal Circuit have jurisdiction."). Indeed, the statute, as interpreted by the Supreme Court, deprives the Court of Federal Claims of jurisdiction over some actions which are normally subject to Tucker Act review. *Worthington v. United States,* 168 F.3d 24, 26 (Fed.Cir. 1999) (citing *Romero v. United States,* 38 F.3d 1204, 1211 (Fed.Cir.1994)); *see also Fausto,* 484 U.S. at 454, 108 S.Ct. 668. The CSRA does not, however, encompass every adverse personnel action taken against a federal employee. *Worthington,* 168 F.3d at 26 (citing *Romero,* 38 F.3d at 1211). Thus, in cases in which jurisdiction under the Tucker Act is challenged by a party based upon an alleged impact of the CSRA, the court must determine whether the CSRA indeed "covers" the cause of action asserted. *See id.* To do so, the court "assesses the jurisdiction of the [MSPB], the primary institution for adjudicating an employee's allegations of prohibited personnel practices under the CSRA." *Id.* Such jurisdiction is not plenary, but is limited to that which is conferred by law, rule, or regulation. *Id.* at 27. If the action is one over which the MSPB may exercise jurisdiction pursuant to a law, rule, or regulation, the Court of Federal Claims lacks power to consider it. *Id.* at 26–27 (citing *McClary v. United States,* 775 F.2d 280, 282 (Fed.Cir.1985) (in turn stating that "[w]here an employee is provided a means of redress under the CSRA, that is, an appeal to the Board, the employee does not have an independent cause of action in the Claims Court")). Conversely, if the claim "is not within the coverage of the CSRA and ...

otherwise falls within the jurisdictional grant of the Tucker Act, the Court of Federal Claims has jurisdiction to adjudicate [the] dispute." *Id.* at 27.

██ It is now well-settled that, in determining whether the MSPB possesses jurisdiction over a particular type of claim, thus depriving the Court of Federal Claims of jurisdiction, the court must engage in a general, rather than case specific, analysis. That is, if the court finds that the CSRA "covers" a particular category of claim, it should decline to entertain causes of action that fall within that category, even in cases in which a particular claimant is unable to successfully invoke the MSPB's jurisdiction in his specific case. This principle emanates from the United States Supreme Court's decision in *United States v. Fausto,* 484 U.S. at 454, 108 S.Ct. 668. In that case, the United States Claims Court held that it lacked jurisdiction over a federal employee's suit under the Back Pay Act which sought to recoup salary payments for a period during which he had been improperly suspended. *See Read v. United States,* 254 F.3d 1064, 1066 (Fed. Cir.2001) (summarizing procedural history of *Fausto*). The Federal Circuit reversed that decision. *Id.* On review, however, the Supreme Court agreed with the trial judge that no jurisdiction over the claim existed. The Court began its analysis by reiterating that the CSRA had "creat[ed] an elaborate 'new framework for evaluating adverse personnel actions against [federal employees]'" and "prescribe[d] in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *Fausto,* 484 U.S. at 443, 108 S.Ct. 668 (quoting *Lindahl v. Office of Pers. Mgmt.,* 470 U.S. 768, 774, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985)). The Court then observed that, in this particular case,

> [n]o provision of the CSRA gives nonpreference members of the excepted service [like Fausto] the right to administrative or judicial review of suspension for misconduct. The question we face is whether that withholding of remedy was meant to preclude judicial review for those employees, or rather merely to leave them free to

pursue the remedies that had been available before enactment of the CSRA.

*Id.* at 443–44, 108 S.Ct. 668; *see also Read,* 254 F.3d at 1067. The Court concluded that Congress' decision to exclude nonpreference excepted service employees from the scope of the relevant appeal provisions "display[ed] a clear congressional intent to deny the excluded employees the protections of Chapter 75—including judicial review—for personnel action covered by that chapter." *Id.* at 447, 108 S.Ct. 668; *Read,* 254 F.3d at 1067. According to the Court,

> [t]he CSRA established a comprehensive system for reviewing personnel action taken against federal employees. Its deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review in the Claims Court under the Back Pay Act.

*Fausto,* 484 U.S. at 455, 108 S.Ct. 668. The decision in *Fausto* "thus established that if the Reform Act gave the Board jurisdiction over a claim involving a specified subject matter or category of employee, the Claims Court had no jurisdiction over that claim under the Back Pay Act—even though in the particular case the employee could not assert the claim before the Board." *Read,* 254 F.3d at 1067; *see also Salinas v. United States,* 323 F.3d 1047, 1048–49 (Fed.Cir.2003).

Here, the parties disagree on whether the MSPB possesses jurisdiction to entertain Ms. Gallo's suit under 5 U.S.C. § 8151(a), thereby depriving the Court of Federal Claims of the power to hear it. This issue turns on whether any statute, rule, or regulation grants to the MSPB a general power to consider claims under that section. *See Worthington,* 168 F.3d at 26–27.

For her part, plaintiff argues that her claim for "restoration rights" under 5 U.S.C. § 8151(a) and 5 C.F.R. § 353.107 escapes the effects of the CSRA. As a threshold matter, she argues that the Court of Federal Claims may exercise Tucker Act jurisdiction over the claim. Pl.'s Resp. at 9. Plaintiff contends that § 8151(a) is money-mandating because it sets forth specific requirements which must

be satisfied before the government's obligation to pay money damages is triggered, and because it describes a sum certain to be awarded thereunder. Ms. Gallo claims that "[t]he statute's use of the words 'shall be credited' makes the language and effect of the statute as mandatory compensation. The sum certain is based upon the length of service." *Id.* at 10.

Next, to show that her claim is not "covered" by the CSRA, plaintiff argues that there is no evidence that the CSRA amended 5 U.S.C. § 8151(a) in any way. She points out that § 8151(a) was added to the United States Code in 1974, as an amendment to FECA, and that the CSRA's enactment in 1978 made no substantive changes to that section. Pl.'s Resp. at 12. Further, and more importantly, plaintiff argues that no law, rule or regulation grants the MSPB jurisdiction over claims based on § 8151(a). This contention centers on the fact that the plain language of § 8151(a) does not explicitly refer to any other source of law which creates such jurisdiction. *See* 5 U.S.C. § 8151(a). Ms. Gallo contrasts this with the text of § 8151(b), which does refer to "regulations issued by the Office of Personnel Management," one of which provides for appeals to the MSPB. Pl.'s Resp. at 13 n. 4. Ms. Gallo insists that this difference in the phrasing of § 8151(a) and § 8151(b) is critical to the court's jurisdictional inquiry:

> Unlike § 8151(b), § 8151(a) does not touch on or have anything to do with the CSRA. Section 8151(b) does relate somewhat to the CSRA because of the Office of Personnel Management (OPM) regulations specifically authorized by § 8151(b). Those regulations are found at 5 C.F.R. Part 353 and specifically allow an appeal to the Merit Systems Protection Board (MSPB). 5 C.F.R. § 353.304 MSPB appeals are a part of the CSRA pursuant to 5 U.S.C. § 7701, thus causing issues related to worker's compensation job restoration to be at least arguably related to the CSRA. But, § 8151(a) is not a part of the CSRA because it contains no similar authority as § 8151(b) under which regulations are promulgated or an MSPB appeal is authorized. Thus, the CSRA and the case law do not pre-empt jurisdiction in this Court.

Pl.'s Resp. at 13 (internal footnote omitted). Ms. Gallo claims, in other words, that "MSPB appeals on worker's compensation restoration are designed only to implement § 8151(b), not § 8151(a) upon which plaintiff's claim is predicated. Thus, the MSPB regulations do not authorize its jurisdiction over appeals from an agency's alleged improper restoration." Pl.'s Sur–Reply at 7 (internal citation omitted). Ms. Gallo concedes that if she had asserted a restoration claim under 5 U.S.C. § 8151(b), that action would be "covered" by the CSRA and barred from Tucker Act review. Pl.'s Resp. at 13. She insists, however, that because § 8151(a) does not refer explicitly to the OPM regulations, her claim under that subsection may be heard in this forum. Last, plaintiff points out that, in her initial MSPB appeal, the administrative law judge determined that the Board lacked jurisdiction over her claim under 5 U.S.C. § 8151(b). Ms. Gallo highlights that finding in an attempt to demonstrate that MSPB jurisdiction over her claim does not exist, and therefore does not deprive this court of power to entertain her suit.

In response to these contentions, the United States argues that Ms. Gallo's claim under § 8151(a) presents a claim of improper restoration, and that the OPM regulations do, in fact, grant jurisdiction over that subject matter to the MSPB. In support of this argument, defendant points to 5 C.F.R. § 1201.3(a)(12) (2007), a regulation which grants the MSPB power to decide improper restoration claims. The government also points to a corollary regulation, 5 C.F.R. § 353.304 (2007), which directs employees who believe they have been subjected to an improper restoration to challenge that restoration before the MSPB. Defendant contends that because Ms. Gallo's claim under § 8151(a) challenges an improper restoration, it is subject to these two regulations and may only be considered by the Board.

The United States disagrees with plaintiff's assertion that a claim under 5 U.S.C. § 8151(a) escapes the impact of the relevant OPM regulations simply because its text does not refer to them outright. Indeed, the government contends that all claims under

§ 8151 are subject to the 5 C.F.R. Part 353 regulations, including 5 C.F.R. § 353.304(a)'s general mandate to appeal improper restoration claims to the MSPB. In support of this interpretation, the government underscores several aspects of the structure and language of Part 353. First, the United States points out that Part 353, titled "Restoration to Duty from Uniformed Service or Compensable Injury," is quite broad. Title 5 C.F.R. § 353.101, which defines the scope of that Part, states, in relevant part, as follows:

> The rights and obligations of employees and agencies in connection with leaves of absence or restoration to duty ... under 5 U.S.C. 8151 for employees who sustain compensable injuries, are subject to the provisions of this part.

5 C.F.R. § 353.101 (2007). Based on this language, defendant argues that "an employee's 'restoration rights' include *all* of the rights and benefits described in 5 U.S.C. § 8151...." Def.'s Reply at 5 (emphasis added). The government further emphasizes the fact that this regulation identifies § 8151 in its entirety, and not just section (b) of that statute, as subject to the provisions of Part 353. *See id.* Defendant is careful to note that the "part" referenced in this regulation, Part 353, includes § 353.304(a), which creates a general right of appeal to the MSPB.

The United States next highlights the fact that 5 C.F.R. § 353.107, on which Ms. Gallo specifically relies, is also located in Part 353. *Id.* at 6. In addition, the regulation echoes the language of § 8151(a). According to defendant,

> [b]oth 5 U.S.C. § 8151(a) and 5 C.F.R. § 353.107 express the employee's rights in terms of credit for the entire period of absence, within-grade step increases, and rights and benefits based upon length of service. Ms. Gallo's argument that Part 353 was promulgated under section 8151(b) and does not apply to section 8151(a) is without merit.

*Id.* For these reasons, defendant insists that only the MSPB is authorized to consider a claim of improper restoration under 5 U.S.C. § 8151(a).

Finally, the United States concedes that, in the initial MSPB appeal, the administrative law judge refused to consider Ms. Gallo's improper restoration claim under 5 U.S.C. § 8151(b). Defendant argues, however, that the judge's finding was based on the specific facts of plaintiff's case (specifically, the fact that Ms. Gallo recovered from her injury after more than one year), and not on a conclusion that the Board lacked jurisdiction over improper restoration claims altogether. The United States insists that the Board does possess jurisdiction over improper restoration claims, in general, and that, under the reasoning of *Fausto,* this fact renders the Court of Federal Claims powerless to hear the current claim, regardless of plaintiff's inability to obtain administrative relief in this instance.

For purposes of this motion, the court will assume without deciding that plaintiff has stated a claim which is subject to Tucker Act jurisdiction. It is true, as Ms. Gallo notes, that 5 U.S.C. § 8151(a) is written in mandatory terms. In addition, plaintiff has presented a plausible contention that a sum certain may be ascertained from its language. The critical question to be answered, then, is whether the CSRA removes jurisdiction over that claim from the Court of Federal Claims and grants it to the MSPB. *See Worthington,* 168 F.3d at 26 (explaining that, under *Fausto,* "the enactment of the CSRA operate[s] to deprive a Tucker Act court of jurisdiction it would otherwise have over certain actions. This court must determine whether this is such an action").

The parties agree, as a starting point, that 5 U.S.C. § 7701 permits a federal employee to file an appeal with the MSPB of "any action which is appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7701(a) (2000). Title 5 C.F.R. § 1201.3(a) sets forth the specific parameters of the MSPB's jurisdiction as it relates to claims such as the one presented here:

> (a) Generally. The Board has jurisdiction over appeals from agency actions when the appeals are authorized by law, rule, or regulation. These include appeals from the following actions:
>
>     . . . .

(12) Failure to restore, improper restoration of, or failure to return following a leave of absence an employee or former employee of an agency in the executive branch ... following partial or full recovery from a compensable injury (5 CFR 353.304)....

5 C.F.R. § 1201.3(a). The OPM regulation referenced in this section, 5 C.F.R. § 353.304, is titled "Appeals to the Merit Systems Protection Board." Section 353.304 states, in relevant part, that

an injured employee or former employee of an agency in the executive branch ... may appeal to the MSPB an agency's failure to restore, improper restoration, or failure to return an employee following a leave of absence. All appeals must be submitted in accordance with MSPB's regulations.

5 C.F.R. § 353.304(a). Clearly, these regulations work in conjunction with one another. Section 353.304 authorizes appeals of improper restoration claims to the MSPB, and § 1201.3(a)(12) concomitantly grants the MSPB jurisdiction to hear those improper restoration claims.

The right of appeal set forth in § 353.304(a) is limited, however, by 5 C.F.R. § 353.304(b), which states that "[a]n individual who fully recovers from a compensable injury more than 1 year after compensation begins may [only] appeal to MSPB as provided for in parts 302 and 330 of this chapter for excepted and competitive service employees, respectively." 5 C.F.R. § 353.304(b). Title 5 C.F.R. Part 330, which governs the rights of competitive service employees like Ms. Gallo, states the following in relation to appeal rights:

An individual who believes that his or her reemployment priority rights under this subpart have been violated because of the employment of another person who otherwise could not have been appointed properly may appeal to the Merit Systems Protection Board under the provisions of the Board's regulations.

5 C.F.R. § 330.209 (2007). Thus, competitive service employees such as Ms. Gallo may file MSPB appeals which allege that they have been passed over for employment in favor of another person, but may not file appeals that challenge the specific details of their re-employment. *See Welter v. Dep't of Transp.*, 73 M.S.P.R. 414, 418–20 (1997) (holding that, in relation to employees whose recovery is more than one year after injury, "[i]f the employee believes that his reemployment priority rights have been violated because of the employment of another person who otherwise could not have been appointed properly, he may appeal to the Board on that basis," but "[t]he Office of Personnel Management's restoration-to-duty regulations do not afford [such] an employee ... the right to appeal an alleged improper restoration to the Board"). Put another way, the OPM regulations do not permit a plaintiff who recovers from a compensable injury after more than one year to file an improper restoration claim with the MSPB. Under the reasoning of *Fausto*, the fact that the regulations permit employees who recover from occupational injuries within one year to file such claims, but do not permit employees who recover *after* one year to do so, indicates that administrative and judicial review of improper restoration claims by the latter group has been barred altogether. *See Fausto*, 484 U.S. at 446–47, 108 S.Ct. 668; *Read*, 254 F.3d at 1067; *Schooling v. United States*, 63 Fed.Cl. 204, 207 (2004). It follows, then, that an employee like Ms. Gallo is precluded from asserting such a claim in either forum. *See and compare Salinas*, 323 F.3d at 1049–50 ("Under the statutory scheme of the Civil Service Reform Act, it may be that the decision whether to award back pay lies in the agency's sole discretion and that there is no forum in which Salinas can challenge that decision."). Contrary to plaintiff's assertions, the administrative law judge's finding that the MSPB lacked jurisdiction over plaintiff's improper restoration claim supports, rather than undermines, a finding that jurisdiction over such a claim is absent in this court.

Based on the foregoing, it is clear that if Ms. Gallo's claim under 5 U.S.C. § 8151(a) challenges a "failure to restore" or an "improper restoration," as those terms are used in 5 C.F.R. § 353.304, then it cannot be

considered by this court.[5] Again, while defendant insists that the claim falls within the second category, "improper restoration," plaintiff disagrees, and contends that her claim does not fall within the ambit of either of those categories. Implicit in plaintiff's argument is a contention that the phrases "failure to restore" and "improper restoration" refer to 5 U.S.C. § 8151(b), but *not* to § 8151(a). Ms. Gallo insists that subsection (a) of the statute authorizes a separate and distinct cause of action which affords her a different type of relief, and one for which no resort to the MSPB was anticipated by the regulations.

In light of the structure and content of FECA and its accompanying OPM regulations, this court finds that Ms. Gallo's position on this matter is untenable. First, it is critical to recognize that, when interpreting 5 U.S.C. § 8151(a), the court must afford the words used therein "their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Williams v. Taylor,* 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (internal quotations omitted) (quoting *Walters v. Metro. Ed. Enters., Inc.,* 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997)); *Murakami v. United States,* 398 F.3d 1342, 1352 (Fed.Cir.2005). The language of 5 U.S.C. § 8151(a), read plainly, does not create a distinct cause of action. Instead, that subsection of FECA appears to serve as a preamble to 5 U.S.C. § 8151(b), and to describe the government's overarching policy related to restoration and re-employment. In this regard, subsection (a) dovetails with subsection (b), which sets forth the specific provisions through which the government's policy is implemented. Section 8151(a)'s character as an introduction, as opposed to a substantive provision, is demonstrated by the fact that the subsection's text does not refer to any implementing OPM regulations. In the court's view, these aspects of the language and structure of 5

U.S.C. § 8151 undermine Ms. Gallo's assertion that subsection (a) of the statute authorizes a separate cause of action.

Further, and perhaps more importantly, even if the court were to assume that 5 U.S.C. § 8151(a) does authorize a FECA claim different than the one described in § 8151(b), the language of subsection (a) supports defendant's argument that such a claim would fall within the realm of "improper restoration." It is true, of course, that § 8151(a) does not utilize the term "improper restoration" explicitly. The subsection does, however, describe the manner in which a restoration under 5 U.S.C. § 8151(b) must be conducted. *See* 5 U.S.C. § 8151(a). Indeed, it is quite similar to the latter portions of 5 U.S.C. § 8151(b)(1) in this regard, as that subsection also contains language outlining the specific rights of employees upon re-employment. Thus, the statute's plain language indicates that claims under § 8151(a) and its companion regulation, 5 C.F.R. § 353.107 would be claims of "improper restoration," if they exist at all.

This interpretation is also supported by an MSPB decision, *Burtch v. United States Postal Service,* 47 M.S.P.R. 518 (1991). In that case, a federal employee filed an MSPB appeal in which she alleged that her employer

> had failed to restore her annual and sick leave completely, as required by 5 U.S.C. § 8151, and that the [MSPB] had jurisdiction to review such a failure under 5 C.F.R. § 353.401(a),[[6]] which includes the authority to review not only an agency's failure to restore an employee to duty following recovery from a work-related disability, but also "improper restoration" following such recovery.

*Id.* at 519. When reviewing the claim, the MSPB found that, if her interpretation of 5 U.S.C. § 8151 was correct, and FECA did entitle Ms. Burtch to additional annual and sick leave, "then the Board's jurisdiction,

---

**5.** Title 5 C.F.R. § 353.304(a) also addresses the "failure to return an employee following a leave of absence." Because there is no allegation here that Ms. Gallo took a leave of absence from her employment with the FAA, that clause of the regulation is not relevant to the current dispute.

**6.** 5 C.F.R. § 353.401(a) is a prior version of 5 C.F.R. § 353.304(a).

which includes the 'improper restoration' of an employee who has fully recovered from an occupational illness within one year, would extend to the agency action in this appeal." *Id.* at 521. The MSPB then considered whether the specific actions challenged by the claimant violated § 8151 and therefore constituted an "improper restoration." *Id.* It is critical to recognize that, in doing so, the Board considered the language of both § 8151(a) *and* § 8151(b). *Id.* at 521–22.

Ultimately, the MSPB determined in *Burtch* that the plaintiff was not entitled to the benefits she sought as a part of her restoration under either 5 U.S.C. § 8151(a) or § 8151(b), and so, it dismissed the claim for lack of jurisdiction. *Id.* at 522 ("Since the agency did not violate section 8151 when it reduced the appellant's sick and annual leave balances to reflect time spent in a non-pay status, we conclude that the agency did not 'improperly restore' the appellant to her position within the meaning of [5 C.F.R. § 353.304(a) ]. The appeal must therefore be dismissed for lack of jurisdiction."). The Board found, specifically, that Ms. Burtch's claim was not proper under § 8151(a) because the benefits she sought to recoup— additional annual and sick leave—were not awarded "based upon length of service," as required under that subsection. *See id.* at 521 (quoting 5 U.S.C. § 8151(a)). That finding indicates, however, that had Ms. Burtch's claim been proper under subsection (a), the MSPB would have deemed it a claim of "improper restoration," and exercised jurisdiction over it pursuant to 5 C.F.R. § 353.304(a)'s predecessor regulation.

In addition, the organization and structure of the OPM regulations as a whole support a finding that claims under 5 U.S.C. § 8151(a) are ones which allege "improper restoration." Of particular relevance here is 5 C.F.R. § 353.101, which defines the scope of Part 353 (Restoration to Duty from Uniformed Service or Compensable Injury). As defendant correctly points out, that regulation identifies 5 U.S.C. § 8151, *in its entirety,* as subject to the regulations in Part 353. The language of § 353. 101 indicates, therefore, that *all* of Ms. Gallo's rights in connection with § 8151 are subject to Part 353. And again, Part 353 includes 5 C.F.R. § 353.304,

which creates a general right to file improper restoration claims with the MSPB. Section 353.101 therefore undermines plaintiff's contention that MSPB appeals are restricted to only those claims based on § 8151(b).

Likewise, the regulation at the core of Ms. Gallo's claim, 5 C.F.R. § 353.107, titled "Service credit upon reemployment," is also found in Part 353. The structure of Part 353 thus indicates that "Service credit upon reemployment" is one aspect of "Restoration to Duty from Uniformed Service or Compensable Injury." Again, according to the text of 5 C.F.R. § 353.101, "restoration under 5 U.S.C. 8151" is governed by the Part 353 regulations, including 5 C.F.R. § 353.304's directive regarding MSPB appeals. It follows then that Ms. Gallo's challenge to the type or amount of "service credit" awarded to her upon re-employment is, in effect, a challenge to an aspect of her restoration, a claim which is subject to Part 353 and generally appealable to the Board. 5 C.F.R. § 353.304(a); *cf. Worthington,* 168 F.3d at 27 (holding that "the Board has no jurisdiction over Worthington's underlying claim and therefore ... no jurisdiction over his back pay claim"); *Abramson v. United States,* 42 Fed.Cl. 326, 332 (1998).

The court does not disagree with plaintiff that, in some instances, a particular worker's compensation claim may fall outside the scope of the CSRA and thus be pursued in the Court of Federal Claims. Indeed, plaintiff has cited several decisions in which this court has exercised subject matter jurisdiction over a personnel claim despite the sweeping effects of that statute. *See* Pl.'s Resp. at 13–15. Here, however, Ms. Gallo has failed to present any persuasive evidence that the claim she hopes to pursue falls outside the bounds of the CSRA's "comprehensive and exclusive legislative scheme to govern federal personnel matters." *See* Def.'s Mot. at 7 (quoting *Bobula v. United States Dep't of Justice,* 970 F.2d 854, 857 (Fed.Cir. 1992)). For the reasons outlined above, it is clear that the provisions of 5 C.F.R. Part 353 work together to create an administrative appeal process related to restoration, and that all claims on that topic must be heard by the MSPB alone. At worst, 5 U.S.C.

§ 8151(a) creates no cause of action at all, and at best, it authorizes an "improper restoration" claim which is subject to that process. In other words, a claim under 5 U.S.C. § 8151(a), if valid, challenges the manner in which a restoration has been effectuated, and so, it must be heard by the Board. To permit Ms. Gallo to avoid Congress' clear intent to direct this category of claim to the MSPB would undermine the CSRA's overarching goal to create "a unitary and consistent Executive Branch position on matters involving personnel action...." *Fausto*, 484 U.S. at 449, 108 S.Ct. 668. Accordingly, the court concludes that it lacks jurisdiction to consider an improper restoration claim under 5 U.S.C. § 8151(a). Defendant's motion to dismiss for lack of subject matter jurisdiction under the CSRA must be granted.

## 2. Subject Matter Jurisdiction under FECA

■ In the alternative, the United States argues that, even if Ms. Gallo's claim is not governed by the CSRA, the Court of Federal Claims is nevertheless barred from considering it based on the jurisdictional provisions of FECA itself. The government points out that FECA sets forth a comprehensive administrative review process through which the Secretary of Labor is afforded the exclusive right to interpret and administer that statute's provisions. *See* 5 U.S.C. § 8145 (2000); *see and compare Collins*, 35 Fed.Cl. at 624 (stating that "FECA vests plenary authority in the Secretary to 'administer, and decide all questions arising under' the Act"). Indeed, there is no question that, by its plain language, FECA vests plenary authority in the Secretary to "administer, and decide all questions arising under" the Act. 5 U.S.C. § 8145; *see also* 5 U.S.C. § 8124(a) (2000). Defendant argues that this scheme provides the exclusive remedy for employees who seek compensation under FECA, and that the Secretary's decisions are final and immune to judicial review. Def.'s Reply at 3–4 (citing 5 U.S.C. § 8116(c) (2000); 5 U.S.C. § 8128(b) (2000)). The government insists that "Congress, through FECA, granted the Secretary sole authority to make determinations concerning compensation for work-related injuries, thus, depriving this Court of the ability to make determinations concerning the

amount of FECA compensation due Ms. Gallo." *Id.* at 5.

Ms. Gallo disagrees. She argues that although the decisions of the Secretary of Labor are generally final and unreviewable, "the non-reviewability ... applies to 'an award for or against payment of compensation.'" Pl.'s Sur–Reply at 3 (quoting 5 U.S.C. § 8128(a)). Ms. Gallo points out that "compensation" is defined in FECA as "the money allowance payable to an employee or his dependents and any other benefits paid for from the Employees' Compensation Fund...." *Id.* (quoting 5 U.S.C. § 8101(12) (2000)). Plaintiff contends that the additional salary and benefits she seeks fall outside of that definition, and so, her claim is not affected by 5 U.S.C. § 8128. Ms. Gallo insists that she "is not asking this Court to review a decision of the Secretary of Labor approving or disapproving any worker's compensation claim with respect to her work-related injury. Therefore, this Court has jurisdiction under the Tucker Act." *Id.* at 4.

As indicated by the parties' briefing, the question of whether plaintiff's claim is subject to 5 U.S.C. § 8128's bar on judicial review turns on the proper interpretation of this provision. That section of FECA, titled "Review of Award," states as follows:

(a) The Secretary of Labor may review an award for or against payment of compensation at any time on his own motion or on application. The Secretary, in accordance with the facts found on review, may—

(1) end, decrease, or increase the compensation previously awarded; or

(2) award compensation previously refused or discontinued.

(b) The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—

(1) final and conclusive for all purposes and with respect to all questions of law and fact; and

(2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

Credit shall be allowed in the accounts of a certifying or disbursing official for payments in accordance with that action.

5 U.S.C. § 8128. There is no question that, under this section, the Secretary's decision to grant or deny compensation in a given instance is immune to judicial review, as are the Secretary's conclusions of fact and law. *Collins,* 35 Fed.Cl. at 625; *see also Pueschel v. United States,* 49 Fed.Cl. 309, 310–11 (2001) (listing cases in which the Secretary's decisions have been deemed immune to judicial review); *Bodine,* 14 Cl.Ct. at 664. Indeed, the Supreme Court has singled out § 8128(b) as a model preclusion statute which incorporates "unambiguous and comprehensive" language of the sort used by Congress when it "intends to bar judicial review altogether." *Lindahl v. Office of Pers. Mgmt.,* 470 U.S. 768, 779–80 & n. 13, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985); *see also Brumley v. United States,* 55 Fed.Cl. 431, 434 (2003); *Collins,* 35 Fed.Cl. at 625. The preclusion statute is interpreted strictly because "[t]he amount and kind of relief available to disabled federal employees is the exclusive province of Congress and the Secretary of Labor, free of judicial examination." *Anderson v. United States,* 16 Cl.Ct. 546, 548 (1989) (citing *Everett v. United States,* 169 Ct.Cl. 11, 340 F.2d 352, 356 (1965)). As such, the courts recognize that

> [i]n creating a claim against itself, the government is not bound to provide a remedy in courts. By absolutely restricting judicial review of the Secretary's decisions, Congress has made it clear that the United States' sovereign immunity in compensation cases has not been waived and may not be waived by the courts to permit a suit against the government for money damages where the Secretary has denied a claim. In enacting ... FECA, Congress did not open the door to suits by government employees but rather only gave the agency the power to grant compensation awards.

*Collins,* 35 Fed.Cl. at 625. Based on this congressional mandate, "[c]ourts are not to question the Secretary's interpretation and application of the Act." *Id.* (citing *Czerkies v. Dep't of Labor,* 73 F.3d 1435, 1440 (7th Cir.

1996)); *see also Brumley,* 55 Fed.Cl. at 434 ("This section insulates from judicial review any decision of the Secretary of Labor 'allowing or denying' payments to federal employees. The Secretary's ruling in this regard is final and conclusive and not subject to review by any court."). Accordingly, this court has concluded, on more than one occasion, that it lacks jurisdiction over claims which question the Secretary's discretionary judgment regarding which sections of FECA apply to a particular claimant, or whether a claim warrants compensation. *See, e.g., Collins,* 35 Fed.Cl. at 625–26 (holding that the court lacked jurisdiction over a FECA claim which questioned the Secretary's discretionary decisions).

It is true, however, that some claims which are more loosely related to FECA escape the preclusive effects of § 8128(b). For example, in *United States v. Lorenzetti,* 467 U.S. 167, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984), the Secretary ruled that an employee who had received a settlement to compensate his non-economic losses was required to use that money to reimburse the Employees' Compensation Fund for payments he had received as compensation for his disability, even though FECA did not provide him relief for non-economic loss. *Id.* at 171, 104 S.Ct. 2284. Judicial review of that decision was permitted, and ultimately undertaken by the Supreme Court, without a consideration of the preclusive effect of § 8128(b), apparently because the reimbursement issue under review did not involve "allowing or denying a payment." *See Brumley,* 55 Fed.Cl. at 435 (quoting 5 U.S.C. § 8128(b)) (explaining the procedural history of *Lorenzetti* ). This indicates that, although § 8128(b) grants complete discretion to the Secretary regarding the allowance or denial of payments, it does not bar review of claims that challenge the recoupment of payments already allowed. *See Lorenzetti,* 467 U.S. at 171, 104 S.Ct. 2284; *Brumley,* 55 Fed. Cl at 435 (holding that the Court of Federal Claims had jurisdiction over the plaintiff's claim that the Secretary could not legally recoup funds it had paid to the plaintiff because of a mistake of fact).

A handful of judicial decisions have noted other unique claims which are unaffected by

§ 8128(b). *See Pueschel*, 49 Fed.Cl. at 311 (stating that "[t]here is ... authority that, in some circumstances, entities other than the Secretary of Labor may hear claims related to workers' compensation"). For example, an employing agency's determination of whether a compensation award resulted from. a false claim is subject to judicial review. *Id.* (citing *Minor v. Merit Sys. Prot. Bd.*, 819 F.2d 280, 283 (Fed.Cir.1987); *United States v. Carpentieri*, 23 F.Supp.2d 433, 435–36 (S.D.N.Y.1998)). A court may review a claim that the Employees' Compensation Appeals Board improperly refused to allocate a settlement amount, wrongfully granted attorney's fees, or improperly failed to include future value in compensation. *Id.* (citing *Purser v. United States Dep't of Labor*, 943 F.Supp. 898, 904–05 (M.D.Tenn.1996)). A court may likewise review job assignments for compliance with Title VII. *Id.* (citing *Taylor v. Sec'y of the Navy*, 852 F.Supp. 343, 352 (E.D.Pa.1994)). Constitutional claims related to the statute have also been deemed subject to judicial review. *See, e.g., Paluca v. Sec'y of Labor*, 813 F.2d 524, 528 (1st Cir.1987) (holding that although § 8128(b) precluded judicial review of the Secretary's policy or rule-making decisions for compliance with FECA, it did not preclude judicial review of constitutional claims related to the statute).

Here, to show that her claim falls outside the scope of § 8128(b), Ms. Gallo focuses on the meaning of the word "compensation," as it is used in that section. As plaintiff correctly points out, the term "compensation" is defined by FECA as follows:

> "compensation" includes the money allowance payable to an employee or his dependents and any other benefits paid for from the Employees' Compensation Fund, but this does not in any way reduce the amount of the monthly compensation payable for disability or death....

5 U.S.C. § 8101(12); *see also Johnson v. Merit Sys. Prot. Bd.*, 812 F.2d 705, 707 (Fed. Cir.1987) (recounting the Board's holding that a claimant will be deemed to have suffered a compensable injury if he or she has received compensation in the form of money or benefits paid from the Employees' Compensation Fund). Absent evidence of Con-

gressional intent to the contrary, the court must afford these words their plain and ordinary meaning. *See Williams*, 529 U.S. at 431, 120 S.Ct. 1479. No party to this suit has suggested that the salary and benefits Ms. Gallo seeks here would be paid to her from the Employees' Compensation Fund rather than from the FAA directly. Accordingly, this language indicates that plaintiff's claim under 5 U.S.C. § 8151(a) does not present a request for "compensation," as that term is defined by FECA.

The law of this circuit also provides support for Ms. Gallo's strict interpretation of the term "compensation." In *Johnson*, 812 F.2d at 709, the Federal Circuit rejected a claimant's argument that "compensation" under FECA was broad enough to include payments made under the Civil Service Retirement Act. The claimant based his position on the fact that the definition of the term "compensation" stated that compensation "include[d]" benefits paid from the Employees' Compensation Fund, rather than stating that compensation was "limited to" benefits paid from that Fund. *Id.* The court found, however, that the word "includes" had been utilized by Congress to indicate that "compensation" under FECA was inclusive of money payments *and* other types of employment benefits, and not to demonstrate that benefits other than those listed explicitly in the statute could be deemed "compensation." *Id.* Thus, the court concluded that the claimant's past receipt of Retirement Act benefits did not constitute receipt of FECA compensation. *Id.* Applying the Federal Circuit's strict interpretation of the term "compensation" to this case, it is clear that the monetary and other benefits requested by Ms. Gallo likewise do not fall within the scope of that provision. *See id.*

In the court's view, however, whether judicial review of Ms. Gallo's claim is permitted is not determined simply by reviewing the definition of the term "compensation." In fact, Ms. Gallo's focus on that term is problematic, because the word "compensation" appears in § 8128(a), which addresses the powers of the Secretary of Labor, and not in § 8128(b), which sets forth the bar on judicial review of FECA claims. Section 8128(b) ap-

plies, by its own terms, to decisions "allowing or denying a payment," and not merely to decisions regarding "compensation." 5 U.S.C. § 8128(b). The fact that subsection (b) utilizes the word "payment," which is not assigned a specific definition by the statute, as opposed to the term "compensation," which is defined by the statute, indicates that subsection (b) is more expansive in scope than subsection (a). Further, § 8128(b) explicitly bars judicial review of all decisions to deny a payment "under this subchapter." That phrase is a reference to Subchapter I of Chapter 81, titled "Compensation for Work Injuries." There is no question that § 8151(a), on which plaintiff's claim is based, is a part of Subchapter I. This indicates that no judicial review of the Secretary's decision to grant or deny a payment to Ms. Gallo under § 8151(a) is permissible. For these reasons, the court must reject Ms. Gallo's attempt to avoid FECA's bar on judicial review.

As the text of 5 U.S.C. § 8128(b) makes clear, claims filed under FECA, including the one lodged here, must be brought to the Secretary of Labor in the first instance. By the statute's own terms, no judicial review of those decisions is permitted. 5 U.S.C. § 8128(b). Indeed, it appears that the remedies introduced by the CSRA in 1978 provide the only outside means of redress for federal employees who hope to enforce their restoration rights under this statute. It follows that, even if Ms. Gallo's claim under 5 U.S.C. § 8151(a) is governed by FECA alone, and is unaffected by the CSRA, the Court of Federal Claims is nevertheless without authority to review it. *See and compare Bodine,* 14 Cl. Ct. at 664 (stating, in response to an argu-

ment that a claim was based not on the CSRA, but instead on a provision of FECA, that "even if plaintiff's interpretation were correct, FECA does not contain a waiver of sovereign immunity that would permit a suit against the Government for monetary damages in instances where the Secretary of Labor denied a continuation claim"). Defendant's motion to dismiss the claim, for lack of subject matter jurisdiction under FECA, must therefore be granted.

## B. Failure to State A Claim

Defendant also argues that the complaint fails to state a claim upon which relief can be granted. This contention is based, in large part, on the government's assumption that plaintiff intended to set forth a cause of action under 5 U.S.C. § 8151(b). Because Ms. Gallo has now made it clear that she does not rely on that subsection of FECA, the government's arguments in this regard are moot.[7]

Defendant, however, has made a similar argument regarding plaintiff's attempt to state a claim under 5 U.S.C. § 8151(a). The United States points out that, under the plain language of 5 U.S.C. § 8151(a), rights are afforded to employees who "resume" employment with the federal government. Def.'s Mot. at 10; Def.'s Reply at 8. Although defendant does not identify a particular definition of the term "resume," the government argues that the word's plain and ordinary meaning provides insight on this matter, as does the language used in § 8151(b). The United States notes that subsection (b)'s implementing regulations limit relief to those employees who have been separated from service as a result of a com-

---

7. The government argues that, under the plain language of § 8151(b) and its accompanying regulations, restoration rights are afforded only to federal employees who have been separated or furloughed, or who have weathered a decrease in grade level, as a result of a compensable injury. Defendant points out that here, Ms. Gallo was never separated or furloughed, nor did her grade level change during the course of her injury and recovery. In fact, the United States contends that plaintiff never even received priority consideration for placement under 5 U.S.C. § 8151(b)(2) or 5 C.F.R. § 353.301(b). For that reason, the United States disputes plaintiff's claim that she was "restored" to her previous

position. Defendant also asserts that Ms. Gallo has admitted that she was never "restored" in her own pleadings. Def.'s Reply at 8–9 (citing Pl.'s Resp. at 17). The government states that Ms. Gallo actually received her current position as an air traffic controller not as a result of a restoration, but instead, through a competitive selection. From these assertions, defendant insists that plaintiff cannot state a claim under 5 U.S.C. § 8151(b), and thus, has not stated a claim upon which relief can be granted. Plaintiff's briefing makes it clear, however, that Ms. Gallo does not intend to pursue a claim under that subsection of FECA, and so, these arguments need not be addressed by the court.

pensable injury. In addition, 5 C.F.R. § 353.103(b) identifies the "[p]ersons covered" by Part 353 as those employees who have been separated or furloughed from federal employment. Defendant claims that because Ms. Gallo's employment with the FAA did not cease via termination, furlough, a decrease in grade level, or otherwise, her employment, likewise, never resumed and she cannot state a claim under § 8151(a). In response, plaintiff points out that she relies only on § 8151(a), which contains no explicit language identifying separation, furlough, or grade level decrease as prerequisites to recovery.[8] Ms. Gallo has not, however, attempted to rebut defendant's contention that her employment with the FAA did not "resume," as that term is generally defined.

In the court's view, defendant's argument regarding Ms. Gallo's ability to state a claim under 5 U.S.C. § 8151(a) is persuasive. There is no question that the proper interpretation of the term "resumes," as it appears in that subsection of the statute, is critical to resolving the government's motion. Defendant is justified in arguing that, to discern the meaning of this term, the court should look to subsection (b) of the statute, and to the statute's implementing regulations, as well. That approach conforms with the court's long standing policy to construe the subsections of federal statutes in harmony with one another. *See generally Gustafson v. Alloyd Co.*, 513 U.S. 561, 568, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) ("In seeking to interpret the term 'prospectus,' we adopt the premise that the term should be construed, if possible, to give it a consistent meaning throughout the Act. That principle follows from our duty to construe statutes, not isolated provisions."); *Melrose Assocs., L.P. v. United States*, 43 Fed.Cl. 124, 140 (1999) ("Accepted principles of statutory construction also provide that the courts must interpret a statute as a whole."). Further, it is well-settled that, in construing a statute, courts are directed to afford the words used

"their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Williams*, 529 U.S. at 431, 120 S.Ct. 1479 (internal quotations omitted); *Murakami*, 398 F.3d at 1352. In light of the plain and ordinary meaning of the term "resumes," and the definitions used in conjunction with § 8151(b), the court agrees with the United States that 5 U.S.C. § 8151(a) applies to federal workers whose employment with the government has terminated or otherwise ceased, and then begun again. Because Ms. Gallo did not stop working for the federal government at any time, her attempt to state a claim under § 8151(a) fails. Defendant's RCFC 12(b)(6) motion must therefore be granted.

## CONCLUSION

It is clear beyond cavil that, in this instance, the intersection between the jurisdictional provisions of the CSRA and FECA is pivotal to the resolution of defendant's motion, and indeed, to the vitality of plaintiff's entire case. On these critical issues, the court agrees with the United States that jurisdiction over this matter in the Court of Federal Claims is lacking. In addition, the facts as alleged by plaintiff do not entitle her to pursue a claim under 5 U.S.C. § 8151(a). Because the statutory language of the CSRA and FECA bar this court from considering Ms. Gallo's request for relief, in any of its suggested forms, defendant's motion to dismiss for lack of subject matter jurisdiction, and for failure to state a claim, must be granted. Plaintiff's case is therefore dismissed.

For the foregoing reasons, it is hereby **ORDERED** that

(1) Defendant's Motion to Dismiss, filed November 17, 2006, is **GRANTED;**

(2) The Clerk's Office is directed to **ENTER** judgment in favor of defendant **DISMISSING** this lawsuit in its entirety, without prejudice; and

---

**8.** Plaintiff also claims that she suffered the equivalent of a grade level decrease during her recovery, because she was awarded less retirement and overall pay during that time than her counterparts who were not injured in the course of their employment. This argument is, of course,

only directly relevant to a claim under 5 U.S.C. § 8151(b). Because Ms. Gallo has made it clear that she does not request relief under that section, the contention need not be considered. Moreover, plaintiff has presented no authority in support of this gloss on the text of § 8151(b).

(3) Each party shall bear its own costs.